*E. B. Martindale,* for the plaintiff.

*W. Grose,* for the state.

---

### BANKUS and Others *v.* THE STATE.

Where, by previous concert, three or more persons, by their voices or a trumpet, make a great noise tumultuously, in the night-time, in the vicinity and within the hearing of persons not participating with them, the act, under the R. S. 1843, is a riot.

The fact that the witnesses who heard the noise were not alarmed by it, does not change the nature of the offence.

Neither does the circumstance that those who made the noise were in a good humor at the time.

A defendant indicted for a crime, cannot exempt himself from punishment by showing that it was the custom of the country to do the act which constituted the crime.

ERROR to the *Henry* Circuit Court.

PERKINS, J.—Indictment for a riot. Jury trial, conviction, motion for a new trial overruled, and judgment against the defendants.

The bill of exceptions in the case states the substance of the evidence given as follows: "*Jesse Bankus, Lewis Simpson, William Woods,* and *William McShirely,* four of the defendants, were on trial, and three witnesses were examined on the part of the state, (one of whom was engaged in the alleged riot with the defendants), whose tes-

timony tended to prove that on a certain evening, within a year before the finding of said indictment, at the county of *Henry*, the above-named defendants were at a certain place in said county, called *Chicago*, (there being no evidence to prove that they had assembled at said place by previous concert or arrangement, for any purpose whatever, except the facts that they were all present without any known business, and that they lived in different parts of the neighborhood); that there had been an infair at the house of one *Jacob Wise*, in said *Chicago*, whose house was situated on or near the public highway; that the defendants, with one exception, were young men, one of whom went to a neighboring house and borrowed a horn, with which they marched back and forth along the highway, sometimes blowing said horn and singing songs, but not vulgar ones, before the house of said *Wise*, and north and south of it, and hallooed so that they could be heard near a mile distant, as certain persons, not witnesses, had informed said *Wise;* and that they continued on the ground, thus acting, till one or two o'clock in the morning. But said witnesses all concurred in stating that the defendants were all in good humor, and used no violence further than above set forth; that they had no guns or weapons of any kind, made no threats or attempts at force of any kind; that the witnesses were not in the least alarmed, and feared no danger of any kind, and were in no way disturbed, except that *Jacob Wise* stated that he went to bed about nine o'clock, and was awakened occasionally by the hallooing in the road, and that a pedler, who put up at the house of said *Wise* that night, (it being a public house), inquired if there were a lock and key to the stable in which his horses were kept; and that said *Wise*, at the instance of said pedler, locked the stable;" which was all the testimony given in the cause.

The question is, whether, upon the foregoing evidence, the jury were authorized to find the defendants guilty of a riot.

The R. S. of 1843, enact, p. 973, that "if three or more persons shall actually do an unlawful act of violence,

either with or without a common cause or quarrel, or even do a lawful act in a violent and tumultuous manner, they shall be deemed guilty of a riot." The R. S. of 1852, vol. 2. p. 425, thus define a riot: "If three or more persons shall do an act in a violent and tumultuous manner, they shall be deemed guilty of a riot."

A great noise in the night-time, made by the human voice or by blowing a trumpet, is a nuisance to those near whom it is made. The making of such a noise, therefore, in the vicinity of inhabitants, is an unlawful act; and, if made by three or more persons in concert, is, by the statute of 1843, a riot. All these facts exist in the present case. Here was a great noise, heard a mile, in the night-time, made with human voices and a trumpet, in the vicinity of inhabitants. The requirements of the statute for the making out of the offence are filled. The noise was also made tumultuously. The act itself involves tumultuousness of manner in its performance. But it is said, here was no alarm or fear. The statute defining the offence says nothing about alarm or fear. In this case, however, it was only the witnesses who were not alarmed. Others within the distance of the mile in which the noise was heard, and who were not present to observe the actual condition of things, may have been, and doubtless were, alarmed; and the pedler was afraid his horses would be stolen.

It is said the rioters were in good humor. Very likely, as they were permitted to carry on their operations without interruption. But with what motive were they performing these good-humored acts? Not, certainly, for the gratification of *Wise* and his family. They were giving them what is called a charivari, which *Webster* defines and explains as follows: "A mock serenade of discordant music, kettles, tin-pans, &c., designed to annoy and insult. It was at first directed against widows who married a second time, at an advanced age, but is now extended to other occasions of nocturnal annoyance and insult."

Again, it is urged that these defendants were but acting in accordance with the custom of the country. But a cus-

tom of violating the criminal laws will not exempt such violation from punishment. In the case of *The State of Pennsylvania* v. *Lewis, et al.*, Add. R. 279, it appeared that on the 5th of *November*, 1795, there was a wedding at the house of one *John Weston*. The defendants in said case were there without invitation, were civilly treated, and, in the evening, when dancing commenced, began a disturbance in which, during the evening, *Weston* was so seriously injured that, on the third day after, he died. On the trial of the indictment against said defendants, *Campbell, Pentecost,* and *Brackenridge,* in their argument, said, "These men did nothing more than an usual frolic, according to the custom and manners of this country. There was no intention of hurt, no design of mischief, in which the malice, which is a necessary ingredient of murder, consists." But the argument did not prevail; and the Court said, "If appearance of sport will exclude the presumption of malice, sport will always be affected to cover a crime." The defendants were convicted of murder in the second degree.

The case before us we regard as a plain, but not an aggravated one, of riot, and the judgment below must be affirmed. The defendants were fined but 3 dollars each.

*Per Curiam.*—The judgment is affirmed with costs.

*C. H. Test,* for the plaintiffs.

*D. S. Gooding,* for the state.