## MAYO *v.* OWEN, administrator, *et al.*

No. 17609. Argued October 8, 1951—Decided November 13, 1951.

*Cumming, Cumming & Cumming,* for plaintiff in error.
*Christopher & Futral, John H. Goddard,* and *Beck, Goodrich & Beck,* contra.

ALMAND, Justice. J. C. Owen Jr., as administrator of the estate of Sari Phillips Owen, brought a petition seeking direction from the court as to the proper persons to whom he should distribute the proceeds of the estate of his intestate. He named as defendants Thomas R. Mayo, who claimed to be the lawful husband of the deceased, and several other persons, who claimed that they, as the brothers and sisters, mother and father of the deceased, were her lawful heirs. These defendants in their response denied that Mayo was the lawful husband of the deceased; and alleged that Sari Mayo died without husband or children surviving her, and that they, as her blood heirs, were entitled to her entire estate. Mayo in his response alleged that he and the deceased were intermarried in due form of law on July 31, 1942, and lived together as man and wife until her death; and that, as her surviving husband, there being no children, he was entitled to her entire estate.

On the trial of the case before the court and a jury, it was stipulated that the deceased and Thomas R. Mayo entered into a ceremonial marriage on July 31, 1942, and lived together as husband and wife to the date of her death; that there were no children of the marriage; and that the other named defendants are the blood heirs of the deceased.

The deposition of Thomas R. Mayo was read in evidence. He admitted that he had been previously married to one Lucile Young; but, as to whether or not he had ever obtained a divorce from her, he refused to answer questions as to the time or place he obtained a divorce, on the ground that his answers might incriminate him. He admitted that he had testified under oath in the ordinary's court in March, 1949, on a contest concerning the appointment of a temporary administratrix of the estate of Sari Mayo.

George C. Imes Jr., ordinary of Spalding County, testified that in 1949, when Thomas R. Mayo was contesting the appointment of Rossie Connally as temporary administratrix of the estate of Sari Mayo, said Mayo stated that he had been divorced from Lucile Young in Hartford, Connecticut. The testimony of W. P. Hanners, a deputy sheriff, given on the former trial of this case, was read in evidence. He testified that he was present at the time Mayo testified before the ordinary in March, 1949;

and that Mayo stated he had been previously married to Lucile Young, and that he had been divorced from her in Hartford, Connecticut, in 1938 or 1939.

Lucile Young Mayo, by deposition, testified that she lived in New York; that she and Thomas R. Mayo were married in Mount Vernon, New York, on January 27, 1936; that they separated at Fort Valley, Georgia, in December, 1939; that she has never brought any proceedings for a divorce against said Mayo, nor has she received any notice of any proceedings on the part of Mayo for a divorce or annulment of their marriage; and that she considered herself married to Mayo.

John H. Goddard testified that he was present at the hearing in the ordinary's office in March, 1949, and heard Mayo testify that he had been married to Lucile Young, and had been divorced from her in Hartford, Connecticut, in 1938 or 1939; that in September, 1950, he went to Hartford, Connecticut, and searched the records of the Superior Court of Hartford County and found no record of any divorce between Mayo and Lucile Young.

The jury found against the claim of Thomas R. Mayo that he was the lawful husband of the deceased, and the court entered a judgment directing the administrator to distribute the estate among the other defendants. Mayo's motion for a new trial on the general and several special grounds being overruled, he brings the case here for review.

None of the questions here for review are controlled by the rulings of this court on the former appearance of this case (*Mayo* v. *Owen*, 207 *Ga.* 641, 63 S. E. 2d, 649).

■ Special grounds 2, 3, and 4 will be considered together. All these grounds complain that the court erred in admitting in evidence testimony of Hanners, Himes, and Goddard as to the statement Mayo made in 1949 in the ordinary's court, that he had been divorced from Lucile Young in 1938 or 1939, in Hartford, Connecticut. The grounds of objection were: (a) no showing or foundation with respect to the identity of parties or issues as between the parties in the former hearing and in the present case; (b) they were not admissible as former testimony, since Mayo was accessible as a witness; (c) they were not admissions against his interest; and (d) the entire testimony as to what Mayo said was hearsay.

The admissions of a real party at interest are admissible, and the admissions here which the court allowed in evidence were not subject to the exceptions found in Code § 38-403. "Admissions do not come in, on the ground that the party making them, is speaking from his personal knowledge, but upon the ground that a party will not make admissions against himself unless they are *true*. The fact that he makes them against his interest, can be reasonably explained only on the supposition that he is constrained to do so by the force of the evidence." *Kitchens* v. *Robbins,* 29 *Ga.* 713, 716. The admissions by parties as to a matter relevant to the case on trial are not to be regarded as inferior evidence, but when satisfactorily proven they constitute grounds of belief on which the mind justly reposes with strong confidence. *Ector* v. *Welsh,* 29 *Ga.* 443, 450 (4).

Mayo, in order to recover the estate of the deceased, had to establish that he was her lawful husband. Any admission that Mayo made relative to a previous marriage or divorce would be relevant to his contention that he was the lawful husband of Sari Mayo at the time of her death. In the evidence objected to, Mayo stated that he was previously married to Lucile Young, which was an admission against his interest, and his statement that he had been divorced from her in Hartford, Connecticut, was an admission relevant to the issue as to whether he was the lawful husband of Sari Mayo. This testimony was not subject to the objections made, and the court properly admitted the evidence complained of in these grounds.

■ Special ground 1 complains that the court erred in charging the jury the provisions of Code § 38-119, as to a presumption arising from failure of a party to produce evidence in his power or reach. The objections to this charge were: (a) it was not sound as an abstract principle of law; (b) the charge had no application to the facts in the case; and (c) the charge in effect misplaced the burden of proving that Mayo did or did not have a divorce, and the only attempt to show that Mayo had not procured a divorce was hearsay testimony of Hanners, Himes, and Goddard; and the charge led the jury to believe that they could weigh and consider, as against and as overcoming the presumption in his favor as to the second marriage, a weaker presumption such as non-production of evidence.

It is true that, upon proof of a ceremonial marriage between Thomas R. Mayo and Sari Phillips, a presumption arose that, if there had existed at a prior time a marriage between Mayo and another woman, the said marriage had been dissolved by death or divorce, and Mayo established a prima facie case that he was the lawful husband of Sari Mayo, and the burden was upon her blood heirs to overcome this presumption by evidence. In the case at bar, the blood heirs introduced evidence which disclosed that Mayo had been previously married to one Lucile Young, that she was still in life, and that she had never obtained a divorce or had any notice of Mayo obtaining a divorce; and they also introduced evidence that Mayo had stated that he had obtained a divorce in Hartford, Connecticut, in 1938 or 1939, from Lucile Young, and a witness testified that he had searched the records of the Superior Court of Hartford and found no record of any divorce having been granted to Mayo. Although the highest and best evidence of whether or not a party had obtained a divorce would be a certified copy of the divorce decree itself, the fact whether or not a divorce had been granted to Mayo was peculiarly within his knowledge. It is true that the blood heirs here had the burden of proving a negative (Code, § 38-103), but where the means of proving a negative are not within the power of one of the parties, but all the proof on the subject is within the control of the other, who, if the negative be not true, can disprove it at once, the truth of the negative averment can be presumed from the fact that the party who has within his power proof, if such proof exists, that the negative is not true still withholds it or does not produce such proof. In such a case, the burden is then thrown upon the party having the power to produce such proof to prove the affirmative against the negative averment. *Hyer* v. *C. E. Holmes & Co.*, 12 *Ga. App.* 837 (4) (79 S. E. 58).

Under the evidence in this case and the issues therein, it was not error for the court to give in charge Code § 38-119. *Fountain* v. *Fuller E. Callaway Co.*, 144 *Ga.* 550 (2) (87 S. E. 651); *Cotton States Fertilizer Co.* v. *Childs*, 179 *Ga.* 23 (174 S. E. 708); *West* v. *West*, 199 *Ga.* 378 (2) (34 S. E. 2d, 545); *Layfield* v. *O'Neill*, 37 *Ga. App.* 265 (139 S. E. 924).

The defendant introduced evidence which established the

fact of a ceremonial marriage between himself and Sari Phillips, and that they were living together as husband and wife at the time of her death. This raised a presumption that his prior marriage to Lucile Young had been dissolved either by her death or by divorce. The burden was then upon the blood heirs to show by evidence that Mayo's first wife was in life at the time of the second marriage, and that the first marriage had not been dissolved. *Nash* v. *Nash,* 198 *Ga.* 527 (2) (32 S. E. 2d, 379). When evidence was introduced (a) that the first wife was in life, (b) that she had never obtained a divorce, (c) that she had never received any notice of divorce or annulment proceedings by Mayo, and (d) that Mayo had not obtained a divorce in the jurisdiction where he said he had obtained a divorce, the presumption in favor of the lawfulness of the second marriage, in the parlance of the game of chess, was checkmated, and the burden was then upon Mayo to show that he had obtained a divorce from Lucile Young. See *Azar* v. *Thomas,* 206 *Ga.* 588 (3, 4) (57 S. E. 2d, 821). Though he admitted his marriage to Lucile Young, he declined to answer questions by counsel for the other defendants as to the time and place where he had obtained the divorce, on the ground that his answer might incriminate him. He chose to rely on the presumption which the law raised by proof of his second marriage. As pointed out in the second division of this opinion, the means of proving a divorce, if he had obtained one, were solely within his power, but he preferred to remain silent. Abstractly, silence may be golden, but in the instant case Mayo was under a duty to speak, if he would prove the lawfulness of his second marriage. Notwithstanding the presumption which in the beginning relieved him of proof by evidence, this presumption ceased to exist with the introduction of evidence showing the continuing existence of the first marriage. With this presumption in his favor being removed, and he having failed to show by evidence that his marriage to Sari Phillips was lawful, Mayo failed to carry the ultimate burden which was upon him if he would be entitled to the estate of Sari Mayo.

The instant case is not unlike that of *Wilson* v. *Allen,* 108 *Ga.* 275 (33 S. E. 975). In that case one Jane Wilson, claiming to be the widow of John Wilson, sought to have a year's support

set aside out of the property of the deceased Wilson's estate. On the trial of a caveat, which denied that she was the lawful wife of the deceased, there was evidence of a prior marriage of Jane Wilson, and she sought to show that she had been divorced from the former husband; but a certified copy of the divorce proceedings showed that only one verdict had been obtained, and that the case had been dismissed. This court, in upholding the judgment in favor of the caveators, said: "It was shown in this case that there was living, at the time of the alleged marriage between the applicant and the deceased testator, a former husband of the applicant, to whom she had been lawfully married. This former marriage was proved by the license issued by the proper authority, and evidence showing that the ceremony was performed by one legally authorized to render the service. In fact the applicant herself did not deny the legality of the marriage, but sought to justify her conduct in marrying during the lifetime of her former husband by claiming that she had been divorced from him. Manifestly, then, the burden, under the circumstances of this case, was upon her to prove such a dissolution of the former marriage." (p. 278). See, in the same connection, *Cassidy* v. *Clark*, 62 *Ga.* 412.

There is sufficient evidence in the record to support the finding of the jury that Thomas R. Mayo was not the lawful husband of Sari Phillips Mayo at the time of her death; and it was not error for the court to overrule Mayo's motion for a new trial as amended.

*Judgment affirmed. All the Justices concur.*