62255. JOHNSON v. THE STATE.
62517. SCHOLLKOPF v. THE STATE.

BIRDSONG, Judge.

Thomas S. Johnson and Robert Harry Schollkopf were convicted of three counts in violation of the Controlled Substances Act and 15 counts of second degree forgery. They were each sentenced to serve 26 years.

The transcript establishes that on March 26, 1980, two police officers from the State of Alabama came to LaGrange with a warrant for the arrest of Schollkopf alleging the commission of a criminal offense. With the aid of a deputy from Troup County, Schollkopf was located and arrested. He was taken to the police station. During interrogation, it was established that Schollkopf lived in a home jointly owned by himself and Johnson. Schollkopf granted permission for the officers to search the home for evidence of contraband (controlled substances and related items). Schollkopf accompanied the three officers to his home. Schollkopf and Johnson kept five large dogs in the home. The dogs were locked in Johnson's room while the officers conducted the search of the entire house, with the exception of the room containing the five dogs. The search revealed pill bottles in great number scattered throughout the living area. Some of these bottles had liquid contents, some had powdery residue, and most were empty. An undisclosed number of boxes of syringes and literally hundreds to thousands of used syringes were found scattered all through the house. Some of these syringes also contained residue. The bedroom normally occupied by Schollkopf was searched and an undisclosed number of prescription pads and individual prescription slips were found upon and in the drawers of a dresser in Schollkopf's bedroom. Schollkopf admitted that he had been feeding his drug habit for some time from drugs obtained in central Georgia and Alabama either by making fictitious complaints to doctors and thus obtaining legitimately made prescriptions or while in a doctor's office surreptitiously taking prescription pads and thereafter forging prescriptions, including the signature of the doctor whose name appeared on the prescription pad. Schollkopf admitted that the 15 prescriptions which form the basis of the 15 counts of second degree forgery had been executed by him but had not yet been "cashed."

After all the rooms in the house (except where the dogs were located) had been searched and several bags of evidence had been collected and marked, the officers left the house with Schollkopf to return to the police station. As they were driving away, the appellant Johnson was observed driving toward the house. The officers apprehended Johnson. Thereafter, Johnson was returned to the house and a search was made of the room in which Johnson customarily slept. In that room were found many additional syringes as well as a small amount of marijuana in the form of a cigarette and partial cigarettes. The several bags of evidence were stipulated by the parties to have been delivered to the crime lab. Upon testing the liquid, the powdery residue and the green material, the lab results established the presence of Pethidine, Pentazocine, and marijuana, accounting for the three counts alleging violations of the Controlled Substances Act. The 15 forged prescriptions formed the basis of the second degree forgery counts. The appellants were separately defended at a joint trial and following conviction each filed a separate appeal. The two appeals have been consolidated for ease of disposition. Johnson enumerated five alleged errors and Schollkopf, six. Four of each of their respective enumerations are common; Johnson has filed one enumeration unrelated to any filed by Schollkopf and Schollkopf has filed two independent enumerations. *Held:*

1. Each appellant has complained that the trial court erred in refusing to grant a severance. Neither appellant took the stand to offer evidence. A statement made by Schollkopf was offered against him only. In that statement, Schollkopf made incriminating admissions concerning his drug habit, and the forgery of the prescription slips. He did not implicate Johnson, however. Schollkopf maintained he had solely executed the prescriptions and that he was "strung out" but made no reference to Johnson. As opposed to the statement of Schollkopf (limited by instruction to Schollkopf only) all other incriminating evidence arose out of the contraband found throughout the jointly owned house. Johnson argues that he expected Schollkopf to testify in exoneration provided Johnson was tried separately from and after a trial of Schollkopf. The joint trial resulted in neither party giving testimony. Johnson complains this denied him the opportunity of utilizing the testimony of Schollkopf. Lastly Schollkopf argues that the trial court first accepted a guilty plea entered by Schollkopf and then when Schollkopf protested the severity of the sentence, refused the plea. Both appellants complain that the trial court forced the withdrawal of the guilty plea and a joint trial. For all these reasons, appellants complain that the trial court erred in denying the severance.

We find none of the enunciated complaints of prejudice in the denial of the motion for severance to be meritorious. The facts developed by the state, whether offered at a joint or a separate trial, necessarily would have been substantially the same. The search was conducted following the express permission of an owner of the premises. Most of the incriminating matter was found in common areas of the house. Neither the state nor appellants offered evidence that any part of the house was for the exclusive use of one of the owners as opposed to joint access by the other joint owner. The jury was never aware that Schollkopf had attempted to enter a guilty plea and we do not agree that the transcript shows that the trial court sought affirmatively to dissuade Schollkopf from entering the plea by imposing an unduly harsh sentence (46 years).

The grant or denial of a motion for severance lies within the sound discretion of the trial court and the ruling of the court will be overturned only in the event of an abuse of that discretion. *Cain v. State,* 235 Ga. 128 (218 SE2d 856); *Duffy v. State,* 156 Ga. App. 847 (275 SE2d 658). To warrant a severance, appellants must show the probability of prejudice and may not simply argue that there is a mere possibility that a separate trial probably would give them a better chance of acquittal. To obtain a new trial, they must go further and show prejudice and a denial of due process. *Carroll v. State,* 147 Ga. App. 332, 333 (248 SE2d 702). Our close examination of the transcript fails to disclose that trying two defendants was confusing to the jury; or that there was evidence admitted against one which improperly could have been considered against the other; or that the defenses of the two defendants were antagonistic. The real issue in this case involves constructive possession based upon joint ownership of the house. A joint trial had no appreciable effect on that issue, rather it tended to illuminate that issue. Lastly, we find no error resulting from the fact that Johnson sought to call Schollkopf as a witness only to have Schollkopf exercise his right to remain silent. An appropriate charge was given by the trial court as to the exercise of that right by both appellants. Johnson knew before calling his co-defendant as a witness that Schollkopf would not testify at a joint trial. Johnson, thus was aware what the result would be if he called Schollkopf as a witness in the presence of the jury. He could have made his request for Schollkopf's testimony out of the presence of the jury pending a decision by Schollkopf. Johnson cannot now complain of an alleged error which by his own action he procured or aided. *Edwards v. State,* 235 Ga. 603, 604 (221 SE2d 28). For all these reasons, we find no abuse of discretion by the trial court in requiring a joint trial.

2. Each appellant argues that the trial court erred in denying their respective motions for a directed verdict of acquittal. Though

the grounds for their respective motions are different, we will consider the motions in this one enumeration. Johnson argues that there was no evidence that he was in constructive control of any of the drugs in the pill bottles, the syringes, nor of the forged prescription blanks. Though the exhibits analyzed by the crime lab may have been marked in some way as to location of discovery, the jury apparently was not informed where each item of evidence was found in the house. Thus it is impossible to tell from the record whether the pill bottles, syringes or a tablespoon which were found to contain liquid or powdery residue came from any particular location in the house. Johnson argues that because he was not present where the search occurred (except at the last stages), there is no probative evidence that he was in possession, constructive or actual, of any of the controlled substances.

We are not persuaded by such an argument. The evidence showed that the pill bottles, syringes and marijuana were found in the house jointly owned by Johnson and Schollkopf. The deed was in each name as joint owners. It follows that each appellant enjoyed an undivided ownership interest in the entire house. See Frazier v. Cupp, 394 U. S. 731, 740 (89 SC 1420, 22 LE2d 684). While it might have been possible for each appellant to have set aside a part of the house as his exclusive domain, no such evidence was forthcoming. The trial court was thus warranted in accepting as fact that each appellant acted as the owner or head of the house. It is a well established principle in this state, that in the absence of evidence of non-exclusive control of a portion of the premises, contraband found anywhere in a home is presumed to be in the possession of the head of the house. *Cleveland v. State,* 155 Ga. App. 267 (270 SE2d 687). There was substantial evidence that a quantity of Pethidine, Pentazocine and marijuana as well as 15 forged prescriptions were found in the house, thus in the joint possession of both Johnson and Schollkopf. A motion for directed verdict of acquittal is proper only where there is no dispute in the evidence and a finding of not guilty is demanded; or stated otherwise, where a finding of guilty would have to be reversed as being without any probative evidence. *Phillips v. State,* 238 Ga. 632, 633 (235 SE2d 12). In light of the facts of this case, it was not error to deny Johnson's motion for directed verdict of acquittal.

Schollkopf bases his motion for directed verdict of acquittal as to Count 2 of the controlled substances offenses on the contention that there was no showing of a chain of custody of a tablespoon upon which a residue of Pethidine was found. It is true that no witness testified that a spoon, as such, was found. However, it was testified that six bags of evidence were assembled from the great number and variety of items of evidence found in the house. It was stipulated that these

six bags were delivered to the crime lab. The examiner at the crime lab testified that he removed a number of syringes and the silver spoon from one of those six bags. No objection was made to the chain of custody of the contents of the bags until the examiner began to testify concerning the spoon. In proving chain of custody, the state is not required to show that the spoon or substance thereon was guarded each minute it is in the government's custody. In the absence of tampering (of which there is no evidence in this case), the chain of custody has not been shown to be broken. *Davis v. State,* 135 Ga. App. 203, 204 (217 SE2d 343). We find no merit in the contention by Schollkopf.

3. Each appellant independently objected to the admission in evidence of the spoon on the custody grounds above stated in Division 2 of this opinion. For the reasons therein stated, we find no merit in these enumerations of error.

4. A related enumeration by each appellant contends that it was error to admit into evidence state's exhibits 20 through 25. These exhibits primarily consisted of pill bottles and syringes, some with residue but mostly empty. Appellants argue that these items were not shown to be illegal or to have any probative value and served no purpose except to inflame the jury. We disagree. One issue raised by the appellants was constructive possession. The mass volume of pill bottles and syringes found scattered throughout the house would make it illogical to assume that an occupant and owner of the house would be unaware that the house contained drugs. The sheer quantity also would tend to belie legitimate possession derived from a lawful prescription, a defense offered by the appellants. Moreover, the careless disposal and display of so many bottles and syringes would be corroborative of knowledgeable possession by both occupants of the house. For any one or more of these reasons, this evidence was relevant as logically tending to prove or to disprove a material fact which was at issue in the case, for every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant. *Harris v. State,* 142 Ga. App. 37, 41 (234 SE2d 798). There is no merit to this enumeration.

5. Appellant Schollkopf raises two enumerations relating to his statement. Schollkopf moved for the discovery of any and all written or oral statements made by himself to the authorities. While conducting cross examination of a police witness, counsel for Johnson elicited testimony that Schollkopf, in the presence of the officer had selected out of the many prescriptions the 15 prescriptions which formed the basis of the forgery charges. Schollkopf objected to these admissions on the ground that the state had not released these oral admissions in response to the motion for discovery. Code Ann. §

27-1302 requires the suppression of statements made by a defendant which are not disclosed in response to a motion for discovery. The code section is clear that the *prosecution* is precluded from using such oral declarations by a defendant in its case in chief or in rebuttal. It is readily apparent from this transcript that the prosecution made no attempt to introduce any such evidence of a selective process by Schollkopf. The prosecution's theory was that of joint possession based upon the constructive possession of a head of house. It made no difference to the state who made out the prescriptions or where they were found. The obvious intent of the codal provision is to preclude the state from ignoring the discovery rights of an accused and provides a penalty if the state ignores its responsibilities. The penalty is imposed irrespective of whether the evidence involved might be highly relevant. In this case the evidence was highly relevant and was admissible if not otherwise subject to suppression. Inasmuch as the state did not attempt in any fashion to utilize these admissions by Schollkopf, it was not error for the trial court to allow the admissions into evidence.

Schollkopf makes yet another attack on the admission of his statement. He argues that because Johnson's statement was suppressed as being made after a promise of reward and both Johnson and Schollkopf were interrogated by the same officer part of the time while together, then Schollkopf's statement should also have been suppressed. The evidence shows however that Schollkopf made his incriminating statement which was introduced against him by the state while he was being interrogated alone. Schollkopf made no statement while in the presence of Johnson except as to a totally unrelated matter which was not referred to by any party during the trial of the case in the presence of the jury. The trial court's suppression of Johnson's statement therefore had no bearing on the ruling as to Schollkopf's statement.

The second prong of Schollkopf's attack on the admission of his statement asserts that he was under the strong influence of drugs at the time he made his statement and that the interrogating officer knew or should have been aware that Schollkopf was mentally impeded. The major premise of Schollkopf's argument was that he "mainlined" six to eight drug injections a day and therefore remained constantly "strung out." This was manifested by innumerable "track" marks on his hands and arms. The officer on the other hand testified that Schollkopf was at work when arrested, appeared perfectly normal and gave no visible signs of intoxication. This gave rise to a clear issue of fact. Factual and credibility determinations pertaining to voluntariness made by a trial court after a suppression hearing must be accepted by appellate courts unless such

determinations are clearly erroneous. We find no error in this case. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629); *Gamarra v. State,* 142 Ga. App. 196, 197 (1) (235 SE2d 652).

6. In Johnson's enumeration of error 2 (the final for consideration), Johnson urges that the trial court erred in refusing to require Schollkopf to take the stand as a witness on behalf of Johnson. It is manifest that if Schollkopf had been willing to take the stand and completely exonerate Johnson and had been precluded from doing so by the trial court, the absence of such exculpatory evidence would have been harmful to Johnson. Such an argument, however, ignores the constitutional protection of the defendant Schollkopf's right against self-incrimination as guaranteed by both the Fifth Amendment to the United States Constitution and the Georgia Constitution. Neither the trial court, the state, nor a co-defendant can compel another co-defendant to testify in favor of the calling co-defendant, over objection (which Schollkopf did) for to do so violates those very constitutional protections. See Code Ann. § 1-805. Georgia Constitution 1976, Art. I, Sec. I, Par. XIII. This last enumeration lacks merit.

Finding no merit in any of the several enumerations advanced by each appellant, we will affirm the verdict and judgment in both cases.

*Judgments affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED OCTOBER 6, 1981.

*H. J. Thomas, Jr.,* for appellant (case no. 62255).
*Louis J. Kirby,* for appellant (case no. 62517).
*Arthur E. Mallory III, District Attorney, Marc E. Acree, Assistant District Attorney,* for appellee.

