## 66574. LUSH v. THE STATE.
## 66575. FLAKE v. THE STATE.

McMURRAY, Presiding Judge.

Defendants were jointly indicted and tried for unlawfully manufacturing with intent to distribute methamphetamine (Count 1), and attempt to commit the crime of manufacturing with intent to distribute phencyclidine (Count 2). The jury found defendant Lush guilty of Counts 1 and 2, but found defendant Flake guilty of Count 1 "by aiding and abetting," returning a finding of not guilty as to the attempted manufacture with intent to distribute phencyclidine (Count 2). Defendants were each sentenced to serve fifteen years with ten to serve in confinement and five years on probation.

Defendant Lush appeals following the denial of her motion for new trial, while defendant Flake appeals directly. The appeals being based on one transcript we have consolidated the cases for review.

Defendant Lush enumerates 12 separate alleged errors. Defendant Flake, in substance, enumerates one, i.e., that the state proved mere presence at the scene of the crime and therefore presented insufficient evidence to warrant her conviction. *Held:*

The evidence as relevant to both cases demonstrates the following: Defendants were friends of several years standing. They began renting living accommodations in February 1982 near Lake Allatoona (Acworth area) in Bartow County (a garage apartment), each contributing a portion of the rent, although the apartment was apparently used more by defendant Lush than by defendant Flake due to her grandmother's illness.

On March 15, 1982, the landlord entered the garage area beneath the apartment where he maintained personal storage, and detected a strong, disagreeable chemical odor. Finding no one was in the apartment, he entered the apartment with a pass key to see if the premises were safe and secure. When entering the apartment, he detected the same odor and observed much chemical paraphernalia including beakers, burners, syphons, and containers of chemicals.

The landlord notified police of what he had observed.

The police had an outstanding fugitive warrant for violation of parole against defendant Flake. Early on the morning of March 17, 1982, the police went to the garage apartment. Defendant Flake was awakened, admitted the police, and was arrested. Incident to the arrest warrant, the police made a cursory investigatory search for other persons or possible weapons and left. Based upon what they observed, they obtained a search warrant and seized the chemical paraphernalia. Two days later, defendant Lush was apprehended.

Defendant Flake contended the drug equipment was brought to the apartment by defendant Lush, and she admonished defendant Lush that the material would have to be removed from the apartment. Defendant Lush, in substance, corroborated this testimony by Flake, testifying that she brought the equipment into the apartment on the afternoon of the 14th and that the first time Flake had seen it was upon Flake's return to the apartment on the afternoon of the 16th.

At the conclusion of the state's evidence, defendant Flake moved for a directed verdict of acquittal maintaining that the state had proved no more than mere presence. She renewed the motion at the conclusion of the defense's case and it is the denial of the directed verdict of acquittal which ultimately forms the basis of her appeal.

### 66574. Lush

1. We find no merit in defendant Lush's contention that the search of the apartment by the police exceeded the scope of the defendant Flake's arrest warrant by extending into all parts of the apartment. The evidence reflects that when this defendant was arrested the police made a cursory, protective sweep to determine if any other person or weapon may have been present. Based upon what they observed during this protective sweep (which was in plain view), a warrant was obtained on probable cause and all that was admitted against the defendants was the product of this lawfully executed search warrant. See *Wood v. State,* 224 Ga. 121, 124 (160 SE2d 368); *Jones v. State,* 126 Ga. App. 841, 844 (192 SE2d 171).

2. There is no merit in defendant Lush's argument that the denial of the motion for severance based upon antagonistic defenses resulted in prejudicial error. Even a casual examination of the transcript reflects that the testimony offered by both defendants was mutually consistent and exculpatory. Under such circumstances, it was not error to refuse a severance. *Johnson v. State,* 159 Ga. App. 819 (285 SE2d 252).

3. The indictment against both defendants properly alleged a

violation of the Georgia Controlled Substances Act. Defendant Lush, however, complains that the incorporation by reference into and made a part of the indictment of an inventory of the chemicals and paraphernalia seized rendered the indictment vague and indefinite. This enumeration lacks merit. The language of an indictment is interpreted liberally in favor of the state or stated otherwise is strictly construed against the defendant. *Green v. State,* 109 Ga. 536 (35 SE 97). Moreover, an indictment sufficient to state a crime in violation of an appropriate statute (which we find to be true in this case) will not be stricken on a demurrer generally asserting that the indictment is vague, uncertain and indefinite. *Jones v. State,* 115 Ga. 814 (42 SE 271).

4. During the presentation of its case in chief, the state's witnesses referred to methamphetamine and phencyclidine as Schedule II Drugs; referred to the assemblage of chemicals and paraphernalia as representing a clandestine or illegal drug laboratory; and identified the strong, offensive odor as residual phenylacetone which had permeated the rugs and draperies of the apartment. Defendant Lush complains that the witnesses testifying to these conclusions were not qualified to give such opinions. This enumeration lacks merit. Opinions such as those stated may be given based upon the experience of the witness testifying. Each witness sufficiently established his expertise and knowledge of the criminal law, chemical odors, or identity of a clandestine drug laboratory. Such experience and knowledge sufficiently forms the predicate for the opinions rendered. *Frazier v. State,* 138 Ga. App. 640, 645 (227 SE2d 284).

5. Defendant Lush also complains that a statement she made to the police officer that the drug laboratory was hers, as well as her conversation with that officer indicating that she was familiar with the chemical process of formulating phenylacetone, a necessary ingredient of phencyclidine, were erroneously admitted as being involuntary. There is no contention that an appropriate Miranda warning was not given. The evidence does not support a contention of involuntariness. We find that the admission of this evidence was not clearly erroneous. *Phillips v. State,* 238 Ga. 497, 498-499 (233 SE2d 758).

6. Defendant Lush argues that the trial court erred in denying her motion for directed verdict of acquittal. She asserts that the evidence is insufficient and particularly because the amount of methamphetamine found was miniscule and therefore could not support an intent to distribute. To the contrary, we find the evidence, though in dispute, to be adequate to support the jury's verdict of guilty as to both Counts 1 and 2. See *Van Kleeck v. State,* 250 Ga. 551,

552 (2) (299 SE2d 735). The scarcity of methamphetamine, once determined to be present, is immaterial in relation to the issue of guilt. *Partain v. State,* 139 Ga. App. 325, 326 (5) (228 SE2d 292).

7. Defendant Lush contends error in the charge of the court on credibility of witnesses and impeachment, on the definition of criminal intent, and the form of verdict. She does not contend that the charge as given was not in legally correct language, only that the charge was misleading, incomplete, or was insufficiently related to Lush as an individual because the charge primarily was couched in language directed toward the defendant Flake. We have examined the charge in its entirety and find that it does not suffer from inconsistency, vagueness, or lack of clarity. We concur with defendant Lush's admission that the charge as given was in legally correct terminology. We also conclude that any jury of normal intelligence would not have been misled as to the applicability of the charge to either defendant. Accordingly, we find no error in the charge of the court. *Merritt v. State,* 110 Ga. App. 150, 153 (137 SE2d 917). See *Todd v. Fellows,* 107 Ga. App. 783 (4) (131 SE2d 577).

8. We find no merit in the assertion that the trial court denied a motion for new trial on the general and special grounds. Those grounds are the same as listed above. For the reasons stated hereinabove, we find no error.

### *66575. Flake*

9. In the remaining enumerations of error defendant Flake claims it was error for the trial court to refuse to direct a verdict of acquittal in her favor and the evidence was insufficient as a matter of law to convict her as aiding and abetting defendant Lush. A directed verdict of acquittal is required only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom demands a verdict of acquittal or not guilty as charged. See OCGA § 17-9-1 (formerly Code Ann. § 27-1802 (Ga. L. 1971, pp. 460, 461)); *Phillips v. State,* 238 Ga. 632, 633-634 (235 SE2d 12).

The state's evidence here established that the defendant Flake was arrested and physically present at the location of the clandestine laboratory. The laboratory was located in an apartment rented by the defendant Flake (albeit also by the defendant Lush). The defendants had been observed almost every day or several times a week at the apartment during their five-week tenancy. True, other friends had visited them at the apartment, which was small. However, it was practically impossible for the roommates (defendants) to hide any individual enterprise from each other. It is quite clear that the

essential elements of the crime involved were proved beyond a reasonable doubt with reference to both defendants even if one of the defendants contends the drug activity was all hers and her roommate had nothing whatever to do with it. The jury, if it sought to believe this testimony, could have found this defendant not guilty. Instead, the verdict of guilty was returned against both defendants. There was ample proof from which the jury could determine and believe that the defendant Flake was guilty beyond a reasonable doubt. See *Valenzuela v. State,* 157 Ga. App. 247, 249-250 (2) (277 SE2d 56); *Turner v. State,* 151 Ga. App. 169, 170 (259 SE2d 171); *Moore v. State,* 240 Ga. 807, 811 (II (1)) (243 SE2d 1). Clearly the evidence was sufficient to convince a rational trier of fact of the defendant's guilt beyond a reasonable doubt. See *Castleberry v. State,* 152 Ga. App. 769, 770 (264 SE2d 239). After a careful review of the trial transcript and the record we hold a rational trier of fact (the jury in the case sub judice) could reasonably have found defendant Flake guilty beyond a reasonable doubt of violation of the Georgia Controlled Substances Act even though the evidence was sufficient to authorize the jury to have believed the testimony of the defendant Flake that she was merely present condoning the activities of her roommate in carrying on this clandestine activity set forth in Count 1 of manufacturing an illegal drug.

*Judgments affirmed. Deen, P. J., Quillian, P. J., Banke, Carley and Pope, JJ., concur. Deen, P. J., also concurs specially. Shulman, C. J., Birdsong and Sognier, JJ., dissent.*

DECIDED NOVEMBER 3, 1983.

*Helen H. Porter,* for appellant (case no. 66574).
*William V. Hall, Jr.,* for appellant (case no. 66575).
*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney,* for appellee.

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion there appears to me to be more than the presumption in favor of the inference based on Flake as a co-tenant of the apartment.

The dissenting opinion, in citing *Mayo v. Owen,* 208 Ga. 483, 488 (67 SE2d 709), written by Justice Bond Almand, deals with the dissipation and vanishing of certain presumptions and permissible inferences. A quote is given from the latter case: "... the presumption in favor of the [inference], in the parlance of the game of chess, was checkmated, and the burden was then upon [plaintiff] to show [the desired basic fact]." I would agree that if there is nothing more in the

case there would be a stalemate or temporary draw resulting in a directed verdict of acquittal. However, where as here, additional evidence of observing both defendants several times a week at the apartment, plus the difficulty in concealing in the dwelling any individual enterprise such as the activity here charged from each other, would be a sufficient thrust against the parry as suggested as a requirement in the dissenting opinion which a jury could consider in arriving at a final verdict or, in the words of the cited case, a final checkmate.

The whole court case of *Jones v. State,* 126 Ga. App. 841 (192 SE2d 171) (1972), involving possession and control of marijuana, does not require a different result. In that case, the defendant was observed from outside the premises doing nothing more, along with two young men and a young woman, than "playing a game of chess by candlelight." The police had obtained a warrant for some unknown person named "Barry" who was not the defendant. The officers found the marijuana on defendant's person after searching him upon their arrival. He was not identified as residing in the dwelling in that case, and there was no evidence of his doing anything suspicious other than participating in the game of chess.

After the trial we must construe the evidence in favor of supporting the jury's verdict of guilty. Flake paid the rent on the apartment. The landlord observed the roommates Flake and Lush almost every day during their five-week tenancy. The apartment's total living area was only 650 sq. ft., making it almost impossible for one to hide anything from the other. Gallon jars were found; chemicals were present; the apartment was in disarray; and on the floor there was found a blue book entitled *How to Manufacture Drugs.* The jury could have disbelieved Lush as to the date when the equipment was brought in.

BIRDSONG, Judge, dissenting.

I fully agree and therefore concur with the first eight divisions of the majority opinion dealing with the enumerations of error raised by the appellant Lush. However, for the reasons stated hereinafter, I cannot shred the mantle of innocence covering the appellant Flake in view of the legal principles arising from the facts disclosed by this record. Accordingly as to the last division, I most respectfully dissent.

Uncontradicted testimony established that from early February until late March, after Flake's grandmother suffered a stroke, the grandmother either was hospitalized or confined to her home. During those several weeks, Flake spent much time nursing her grandmother, both in the hospital and after the grandmother's return, in her home in Atlanta. Flake testified that she would spend

four or five days nursing her grandmother and would be relieved by a sister for a day or two so she could return to her apartment and prepare herself for the next nursing vigil. Thus Flake spent only part of her time in the apartment in Acworth during that several week period. Though the landlord testified he frequently saw both Lush and Flake in and about the apartment, he also testified that he was aware Flake was away nursing her grandmother and possibly was in Atlanta a good deal of that time. Further uncontradicted evidence by Flake showed that she had been absent from the apartment for one or more days prior to March 14 on through March 16. On that evening she came from Atlanta to the apartment and upon entering same, she detected a strong offensive odor and for the first time observed much chemical paraphernalia. Upon inquiry by Flake, Lush explained to Flake that the material had been removed by direction of her supervisor either for destruction or salvage from a supply locker of a chemical supply company where Lush worked part time. Much of the contents of the locker already had been destroyed but Lush brought the remainder to the apartment to determine if it was valuable and should be preserved. Flake complained of the noxious odors that evening as well as the danger of the presence of caustic chemicals. Early on the morning of March 17 as Lush was departing, Flake admonished Lush that the material would have to be removed from the apartment. Shortly thereafter Flake was arrested in the apartment. Lush in substance corroborated this testimony by Flake testifying that she brought the equipment into the apartment on the afternoon of March 14 and the first time Flake had seen it was upon Flake's return to the apartment at about 8:00 p.m. on March 16. There is absolutely no evidence in this record that the chemical paraphernalia was in the garage apartment prior to March 14.

An examination of the transcript makes it abundantly clear that the jury either disregarded or chose not to believe the uncontradicted and unimpeached evidence of both Lush and Flake as to when the contraband was first introduced into the apartment or when Flake first became aware of the presence of the chemical paraphernalia. Inasmuch as the direct and positive testimony of an unimpeached witness which is not inherently probable, incredible or unreasonable, and which is not uncontradicted, cannot be disregarded arbitrarily by the trier of fact (see *Nesbit v. Nesbit,* 241 Ga. 351, 352 (2) (245 SE2d 303)), we must conclude the jury disbelieved the explanation. There being no other independent evidence to establish Flake's active participation so as to show a criminal design or intent to assist Lush in the manufacture of the methamphetamine, the removal of the only direct evidence necessarily required Flake's conviction of the crime of possession of methamphetamine with intent to distribute (as

announced by the jury) be based solely upon an inference arising from her ownership and presence. This is made manifest by the charge of the court for the jury was left with no factual predicate to support its finding of aiding and abetting except that one who is an owner of premises may be charged with possession of all that is contained within the owned premises. Thus, Flake's conviction must rest exclusively on an inference that as the lessee (owner) of the premises she was at least jointly involved in criminal activity with Lush. There is no evidence indicating that Flake was actively involved in illegal activities before her arrest, had ever been aware of or participated in the manufacture of any illegal drugs, or that she was involved with Lush in any capacity other than as one of two joint lessees. Pretermitting the obvious problem created by the inconsistent verdicts of guilt of manufacturing methamphetamine and acquittal of attempted manufacture of phencyclidine based on one and the same evidence, when there was no evidence supporting such a distinction, the facts of this case preclude the applicability of the permissible inference leading to this conviction.

The rebuttable inference of constructive possession of contraband based upon ownership of the premises where the contraband was found arises where immediate and exclusive possession of premises is shown. Such possession authorizes the inference that the owner (or owners) of such property is the owner of what is contained therein, and this inference is referred to as a rebuttable presumption. However, the rule does not apply where there is evidence in the case that the owner has not been in possession of the premises for a period of time prior to the discovery of the contraband or that others have had access to it. *Farmer v. State,* 152 Ga. App. 792, 794 (264 SE2d 235). In such circumstances, to place the burden upon an appellant solely because of ownership, to prove that the contraband was not on the premises possessed with the owner's knowledge or consent would be an onerous rule for the accused owners of leased premises. *Shepherd v. State,* 77 Ga. App. 857 (50 SE2d 111). That the appellant was not in immediate and exclusive control of the premises when they were searched is not necessarily controlling, but where appellant offers evidence reasonably establishing innocence of criminal possession and other evidence establishes that another had equal access to the premises, the application of a presumption of possession of the contraband is not a sound abstract principle of law. In other words, where there is competent evidence that persons other than the accused have had access to or control of the premises for a period of time prior to the discovery of the contraband the burden will remain where it first came to rest, upon the state — without benefit of any presumption

against the owner — to prove beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the accused was in knowing and unlawful possession of the contraband. *Farmer v. State,* supra.

In *Pollard v. State,* 249 Ga. 21, 22 (287 SE2d 189), the Supreme Court stated: "A permissive presumption or inference is one which allows but does not require the jury to infer an ultimate fact from proof of a basic fact. It places no burden on the defendant; it merely advises and guides the jury as to what conclusions they might draw from circumstantial evidence presented at trial. *A defendant challenging a permissive presumption or inference must demonstrate its invalidity as it applies to him."* (Emphasis supplied.)

Flake demonstrated the invalidity of the inference by presenting direct unchallenged credible evidence which called into question the validity of an inference giving rise to knowledgeable and criminal possession based upon ownership of premises. Circumstantial evidence from which the existence of a fact might be inferred, but which does not demand such a conclusion, must yield to positive and uncontradicted testimony of unimpeached witnesses, which is perfectly consistent with the circumstantial evidence relied on to give rise to the inference, and shows that no such fact existed. *Myers v. Phillips,* 197 Ga. 536, 542 (29 SE2d 700).

In the case of *Mayo v. Owen,* 208 Ga. 483, 488 (67 SE2d 709), in dealing with a permissible inference that had been demonstrably explained, the Supreme Court held: "[T]he presumption in favor of the [inference], in the parlance of the game of chess, was checkmated, and the burden was then upon [plaintiff] to show [the desired basic fact]." In substance therefore, the Supreme Court concluded that where the basis for a permissible inference has been explained the permissible inference no longer exists and the burden is thrust back upon the proponent to establish the basic fact without benefit of the inference. If the rule were not so, then no inference ever would be rebuttable. It would still be present (in addition to the fact or facts giving birth to the inference) with the explanation being weighed against the inference. Where there is a reasonable explanation, to give substance to the rule, the inference must dissipate. See *Farmer,* supra, p. 796; 5 ALR3d, § 4A, p. 39.

Within the context of the above authorities and reasoning, it must be concluded that the state established legal possession of the garage apartment jointly in Flake and Lush. Based upon such legal possession, the state perforce relied upon the permissible inference that Flake possessed all within the garage apartment. Upon Flake's demonstration that she did not knowingly permit Lush to place the chemical paraphernalia into the apartment, did not know of its

presence until a few hours before her arrest, did not know its intended purpose, and directed its removal (all corroborated by her roommate), I must conclude that Flake has given a reasonable explanation and thus no permissible inference of criminal activity arises from mere possession or presence in the garage apartment. See County Court of Ulster County v. Allen, 442 U. S. 140 (99 SC 2213, 60 LE2d 777); *Farmer,* supra, p. 796; *Valenzuela v. State,* 157 Ga. App. 247, 249-250 (277 SE2d 56). Even if it is assumed the jury did not believe the explanation, all that remained was the underlying fact that Flake was the lessee. That fact, without the permissive inference, gives rise to nothing more than her mere presence at the site of the contraband and is not compatible with nor sufficient to justify a finding that she criminally possessed or assisted Lush in possessing the drug paraphernalia.

The direction of a verdict of acquittal is proper where there is no conflict in the evidence as to the material issue considering the evidence introduced with lawful inferences arising therefrom. There being no probative evidence of criminal activity arising from mere ownership or presence (precluding the inference of possession arising from ownership), I conclude the trial court erred in denying Flake's motion for directed verdict of acquittal. *Phillips v. State,* 238 Ga. 632, 633 (235 SE2d 12). Accordingly, I must register my dissent to Division 9 of the majority opinion wherein it finds sufficient evidence to sustain the verdict of guilty as to Flake.

I respectfully dissent.

I am authorized to state that Chief Judge Shulman and Judge Sognier join in this dissent.