## A98A0641. CASTILLO v. THE STATE.
### (502 SE2d 261)

JOHNSON, Judge.

Enrique C. Castillo was convicted of driving under the influence of alcohol, driving without proof of insurance, and possessing an open container of alcohol while driving. He appeals from the judgment of conviction entered on the DUI charge.

The state patrol set up a road check for valid driver's licenses and proof of insurance. One of the troopers conducting the road check had been a police officer for about 20 years. He observed Castillo's vehicle approach the road check, suddenly decelerate and abruptly turn right onto a side road. Having entered the side street but a short distance, Castillo then stopped, backed up to give himself room to complete his turn, and re-entered the main road heading in the opposite direction from the road check. The turn was made at the crest of a hill, and in the trooper's opinion, the manner in which the turn and

backing movement were made constituted "an unsafe turn or maneuver." The trooper testified that he did not recall seeing any turn signal light, although he believed that he would have been able to see the turn signal had it been activated. Because of these circumstances surrounding Castillo's abrupt reversal of course, the trooper concluded that Castillo was in a hurry to go back the other way, and this alerted him that "there might be some sort of criminal activity going on," which needed to be investigated. The trooper testified he had "more than a hunch." Based on his law enforcement experience and his observation of the movements of Castillo's vehicle as he approached the road check, he suspected that "some criminal activity might be afoot."

The trooper activated his lights, pursued the vehicle and stopped it approximately a half-mile from the road check. The trooper approached Castillo and asked for his driver's license. At this time, the trooper smelled a strong odor of alcohol on Castillo's breath. At the trooper's request, Castillo performed various field sobriety tests, all of which he failed. He also tested positive for alcohol on the alcosensor test. The trooper observed that Castillo was somewhat disheveled, slightly unsteady on his feet, his speech was slurred and his eyes were bloodshot. An open container of beer was in plain view on the driver's side floorboard of the car. Castillo "appeared intoxicated," and the trooper concluded based on these observations that he "was a less safe driver" because of the alcohol he had consumed. The trooper arrested Castillo and read him the implied consent warnings. Castillo agreed to take a breath test at the local sheriff's office. Castillo took two breath tests, which revealed a blood alcohol concentration of .157 and .153 grams. The trooper further testified that he could have charged Castillo for making an improper turn but elected to charge him with only the three most serious charges.

Castillo's sole enumeration is that the trial court erred in denying his motion to exclude or suppress evidence obtained after he was seized because the state failed to meet its burden of proving that the arresting officer had a reasonable articulable suspicion for making the traffic stop.

In determining the legality of the vehicle stop, this Court can consider all relevant evidence of record, including that adduced at the suppression hearing as well as that adduced at trial. *Jones v. State*, 187 Ga. App. 421, 422-423 (370 SE2d 784) (1988). "When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are

analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment." (Citation and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). The facts in this case were not in conflict and were stipulated by the parties for purposes of the suppression hearing. The facts were not controverted at trial.

An officer may make a brief investigative stop of a vehicle if it is justified by specific, articulable facts which are sufficient to give rise to a reasonable suspicion of criminal conduct. *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996). Moreover, it is immaterial that an arresting officer elected not to charge a defendant with an observed traffic offense, choosing instead to charge the defendant only with the more serious offenses disclosed after the traffic stop had been initiated. See *State v. Wright*, 221 Ga. App. 202, 205 (3) (470 SE2d 916) (1996). It was in the trooper's discretion with which of the offenses, if any, he would charge Castillo. Id.

We find the similarity of facts and legal analysis in *State v. Webb*, 193 Ga. App. 2 (386 SE2d 891) (1989) to be persuasive. In that case, the defendant was stopped after making a possibly illegal u-turn in an apparent effort to avoid a roadblock. Compare *Burns v. State*, 216 Ga. App. 178 (454 SE2d 152) (1995) (defendant's driving pattern after turning into a parking lot was suspicious). Contrary to Castillo's contention, *State v. Jones*, 214 Ga. App. 593 (448 SE2d 496) (1994), where the officer did not observe defendant commit any crime before the traffic stop and had only a mere hunch that the defendant turned around to escape police detection, and *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) (1993), where the stop was based on the officer's intuition that defendant turned into an apartment complex to avoid a roadblock, are not substantially similar to the facts of this case. Here, a state trooper with over 20 years experience saw Castillo engage in an unusual and unsafe turning maneuver, under circumstances from which it reasonably could be concluded that Castillo was attempting to avoid the road check. The facts would justify a citation for the improper turn. Due to the totality of the circumstances, the officer had a reasonable suspicion that Castillo had engaged in some form of criminal conduct. He pursued and stopped Castillo's car and immediately detected alcohol on Castillo's breath. Further investigation provided ample probable cause to arrest Castillo for DUI.

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest

to simply shrug his shoulders and allow a criminal to escape. *Webb*, supra at 4 (1). " 'Deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*.' " Id. Further, an officer's honest belief that a traffic violation has been committed in his presence, even if ultimately proven incorrect, may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop. Id. Accordingly, regardless of whether Castillo's act of making a sudden and abrupt change in speed and a quick and unsafe turn and backing maneuver near the crest of a hill was a traffic violation, it was nevertheless a sufficiently suspicious and deliberately furtive response to the road check so as to give the trooper at least a reasonable suspicion of Castillo's criminal activity and to warrant further investigation. Id.

The trial judge correctly denied Castillo's suppression motion.

*Judgment affirmed. Birdsong, P. J., and Smith, J., concur.*

DECIDED APRIL 14, 1998 —
RECONSIDERATION DENIED APRIL 28, 1998 — 

*George A. Stein, Monte K. Davis*, for appellant.
*Leslie C. Abernathy, Solicitor*, for appellee.