A99A2353. KINMAN v. THE STATE.
(533 SE2d 124)

SMITH, Judge.

Joseph B. Kinman was convicted of driving the wrong way on a one-way street and driving under the influence of alcohol. The trial

court denied Kinman's motion for new trial, and this appeal followed. Although Kinman contends that his motion to suppress certain evidence of his intoxication should have been granted, we find otherwise and affirm.

In ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings are analogous to a jury verdict and will not be disturbed when there is any evidence to support them. *Temples v. State*, 228 Ga. App. 228, 229 (491 SE2d 444) (1997). When reviewing a trial court's ruling on a motion to suppress, the evidence must be construed most favorably toward the court's findings unless those findings are clearly erroneous. *Ledford v. State*, 220 Ga. App. 272, 273 (469 SE2d 401) (1996).

When viewed in this light, the evidence showed that at about 11:00 p.m., Officer Jay Shirah saw two vehicles exit a bank parking lot and travel the wrong way down a one-way street. Maneuvering his patrol car, Shirah immediately managed to pull in front of the lead vehicle, belonging to Kinman, "to prevent an accident." Shirah radioed for assistance, and within seconds Officers Lamar Johnson and David Gabriel responded. Shirah, a K-9 officer, told Johnson he wanted his help with a suspected DUI because he "wasn't real familiar with DUI's." According to Johnson, Shirah explained that "he wasn't real proficient with [DUIs] that he hadn't done a great number of them in the last however long." Johnson further testified, "[Shirah] asked me if I would, you know, take a look at the suspect and administer field sobriety." Shirah turned the investigation totally over to Johnson, who sought and obtained Kinman's permission to perform field sobriety testing.

Johnson testified that he noticed Kinman's eyes appeared "red and glassy," Kinman was "loud and mouthy," and acted "belligerent." Johnson also detected the smell of an alcoholic beverage emanating from Kinman and noted that he appeared disheveled. Based on Kinman's poor performance on standard field sobriety tests, Johnson arrested Kinman.

Kinman's sole enumeration of error is that Johnson, the officer who conducted the field sobriety tests, lacked reasonable articulable suspicion to justify his doing so. He claims that the State failed to offer evidence at the suppression hearing that Officer Shirah possessed an adequate basis for suspecting that Kinman was impaired.

In reviewing a trial court's decision on a motion to suppress, all relevant evidence of record, including trial testimony as well as the testimony offered at the suppression hearing, may be considered. *Temples*, supra; see *Sanders v. State*, 235 Ga. 425, 431-432 (II) (219 SE2d 768) (1975). As Kinman correctly points out, Shirah did not specifically testify at the suppression hearing that he suspected Kinman was intoxicated. Johnson, however, testified that Shirah told

him he wanted help with a suspected DUI.

An officer may conduct a brief investigatory stop of a vehicle when such a stop is justified by specific facts sufficient to give rise to a suspicion of criminal conduct. *Evans v. State*, 216 Ga. App. 21, 23 (2) (453 SE2d 100) (1995). Because Shirah personally observed Kinman committing a traffic offense, he was entitled to stop and investigate further. *Temples*, supra at 231. The evidence is uncontradicted that when the initial detaining officer suspected possible alcohol impairment, he requested and obtained the assistance of another officer who had more experience in conducting DUI field evaluations. In circumstances like these, a police officer may conduct a general on-the-scene investigation and briefly detain a motorist to administer field sobriety tests. *State v. Peters*, 222 Ga. App. 484 (474 SE2d 623) (1996). Since specific, reasonable, articulable facts existed that justified the investigatory stop of the vehicle, Johnson had every right to complete the investigation already lawfully begun. *Lankford v. State*, 204 Ga. App. 405, 407 (2) (419 SE2d 498) (1992) (full concurrence as to Division 2). Moreover, after Johnson observed Kinman's condition, he had reasonable grounds to conduct further inquiry to determine whether Kinman had been driving under the influence of alcohol. *Daugherty v. State*, 182 Ga. App. 730, 731 (2) (356 SE2d 902) (1987); see *Sutton v. State*, 223 Ga. App. 721, 723 (1) (478 SE2d 910) (1996). Since the record contains some evidence to support the trial court's decision, the test results were properly admitted. *Ledford*, supra at 274 (1).

*Judgment affirmed. Pope, P. J., concurs. Miller, J., concurs specially.*

MILLER, Judge, concurring specially.

I concur with the result reached by the majority, but for slightly different reasons. Because the observed traffic violation of going the wrong way on a one-way street was so dangerous and blatant, the initial detaining officer had a reasonable, articulable suspicion that the driver might be intoxicated and so was authorized to briefly stop the motorist to conduct the field sobriety tests. This justified his asking the second officer, Johnson, to conduct those tests. The observation of Kinman's red and glassy eyes and his belligerent, loud behavior took place after Johnson had begun the field sobriety tests and thus could not contribute to or be considered as a basis for the initial articulable suspicion justifying the tests.

DECIDED MARCH 29, 2000.

*Stanley R. Durden,* for appellant.

*Kenneth W. Mauldin, Solicitor, Phillip C. Griffith, Assistant Solicitor,* for appellee.