## A01A0338. TAYLOR v. THE STATE.
(549 SE2d 536)

MIKELL, Judge.

Stephen M. Taylor appeals his conviction following a bench trial for two counts of driving under the influence of alcohol.[1] In his sole enumeration of error, Taylor contends that the trial court erred in denying his motion to suppress. We affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

The uncontroverted evidence presented at the motion hearing shows that on March 27, 1998, Officer Ray Gunter, who was regularly assigned to the DUI Task Force, was conducting a driver's license checkpoint on Highway 78 near its intersection with Cam-

---

[1] OCGA § 40-6-391 (a) (1).

[2] (Citation and punctuation omitted.) *Castillo v. State*, 232 Ga. App. 354, 355-356 (502 SE2d 261) (1998).

bridge Street. At approximately 2:15 a.m., he saw a Jeep Cherokee slow down about an eighth of a mile before the checkpoint as if it were preparing to stop. All of a sudden, the Jeep turned right onto Cambridge Street. Gunter then got into his car and drove toward Cambridge Street. While driving, Gunter saw the Jeep turn left and drive over a curb into the parking lot of a closed business. He also saw the Jeep's headlights bounce "like he [the driver] hit a curb real hard or hit the railroad ties real hard." The driveway entrance to the parking lot was not on Cambridge Street.

The Jeep had already come to a stop when Gunter activated his blue lights and pulled into the parking lot behind the Jeep. Gunter noticed that a couple of the railroad ties on the property were moved. Gunter testified that once he pulled behind Taylor with his blue lights activated, Taylor was not free to go. Gunter approached the vehicle and asked Taylor for his license and insurance information and whether the address on his license was current. Taylor replied yes and volunteered that he was on his way home.

While talking to Taylor, Gunter noticed a strong odor of alcohol coming from the vehicle and that Taylor moved slowly and appeared to be intoxicated. Taylor admitted that he had been drinking after Gunter asked him to exit his vehicle to perform a field sobriety evaluation. Gunter noticed that Taylor's face was flushed and he looked sleepy, his eyes were bloodshot red, his speech was slurred, his gait was unsteady, and a strong alcoholic odor emanated from his breath.

Taylor's performance on the field sobriety tests, along with the positive results of the alco-sensor test, formed the basis for Gunter's opinion that Taylor was a less safe driver while under the influence of alcohol. Consequently, Gunter placed Taylor under arrest for DUI. Taylor took the Intoxilyzer 5000 breath test at the Gwinnett County jail, which showed blood alcohol concentration levels of 0.113 and 0.111.

Taylor moved to suppress all evidence obtained as a result of the stop, which he argues resulted in an illegal search and seizure. The trial court denied Taylor's motion to suppress, and Taylor appeals therefrom.

> At least three [tiers] of police-citizen encounters exist: (1) verbal communications involving no coercion or detention; (2) brief "stops" or "seizures" that require reasonable suspicion; and (3) "arrests," which can only be supported by probable cause. . . . [A] second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspi-

cion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.[3]

In this case, the trial court found that the stop was authorized because it was based on a reasonable, articulable basis. Thus, the court ruled, it was a legal second-tier stop. We agree.

On cross-examination, Gunter testified that he initiated the stop because he suspected that Taylor was avoiding the checkpoint and because of Taylor's driving. We have previously held that abnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal.[4] By contrast, completely normal driving, even if it incidentally evades the roadblock, does not justify a *Terry*-type "tier-two" stop.[5] In this case, Gunter testified that as he approached Taylor, he saw "the headlights of the truck bounce up and down like he [Taylor] either hit a curb real hard or hit the railroad ties real hard." This conduct, combined with the proximity of the roadblock, was sufficiently abnormal or unusual to justify a *Terry*-type (i.e., second-tier) stop. After approaching Taylor's vehicle and investigating further, Gunter had probable cause to arrest (a third-tier encounter). We find no error in the admission of evidence of his intoxication.

Taylor relies on *Jorgensen*[6] and *State v. Winnie*[7] in support of his argument that the stop was improper. Both cases are distinguishable. In *Jorgensen*, the officer testified that he stopped a vehicle based solely on his hunch that the vehicle was trying to avoid a roadblock.[8] The defendant in that case was driving normally as he turned into an apartment complex. We found that the officer's hunch was not sufficient to justify a tier-two stop. In this case, however, Gunter was not relying on a hunch; rather, he stopped Taylor because of Taylor's abnormal driving.

In *Winnie*, the officer saw a vehicle turn into the parking lot of a closed business. The officer pulled into the lot because he thought the occupants of the vehicle could have been there to commit a burglary.[9] When the vehicle drove on, the officer activated his blue lights, and the vehicle stopped. We held that once the defendant pulled away from the parking lot, the officer's suspicion that the defendant was about to engage in criminal activity vanished and he should not have

---

[3] (Citations omitted.) *State v. Causey*, 246 Ga. App. 829, 831 (1) (540 SE2d 696) (2000).
[4] See *State v. Webb*, 193 Ga. App. 2 (386 SE2d 891) (1989).
[5] See *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) (1993).
[6] Id.
[7] 242 Ga. App. 228 (529 SE2d 215) (2000).
[8] *Jorgensen*, supra at 546.
[9] *Winnie*, supra at 229.

stopped the defendant.[10] Though Taylor parked in the lot of a closed business like the defendant in *Winnie*, the similarities between the two cases end at that point. In *Winnie*, the basis for the officer's suspicion disappeared when the defendant left the parking lot. Conversely, here, the officer observed what he thought·was suspicious driving behavior before the vehicle came to a stop. Thus, his suspicion did not dissipate when Taylor parked the vehicle. Accordingly, he had reason to initiate a tier-two stop.

Based on the uncontroverted evidence presented, we find that the trial court's denial of Taylor's motion to suppress did not constitute error.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MAY 29, 2001.

*Patrick D. Deering,* for appellant.

*Gerald N. Blaney, Jr.,* Solicitor-General, *Gary S. Vey,* Assistant Solicitor-General, for appellee.