## A03A0002. BROWN v. THE STATE.

(580 SE2d 348)

JOHNSON, Presiding Judge.

A jury found Timon Brown guilty of committing the armed robbery of a pager store. He appeals from his conviction, claiming the trial court erred in denying his motion to suppress evidence which police obtained by searching his car, in not instructing the jury on identification when misidentification was his sole defense, and in not granting a new trial due to ineffective assistance of trial counsel. None of the enumerations has merit, so we affirm the conviction.

Viewing the evidence in a light most favorable to the verdict, it shows that at around noon, a man wearing a yellow hard hat, a black mask, a white or gray shirt, blue jeans or overalls, and a belt with a yellow tape measure attached entered a pager store through the rear door. Brandishing a handgun, the man told the cashier to put the money into a green AT&T shopping bag, and took cellular phones and pagers from a display case. The man cut a fax phone cord with a cutting tool he brought with him, and took the phone and other items. The robber then fled through a rear door into an alley.

As the robber entered the alley, he encountered two female employees of an adjoining business. The women watched the man, who was no longer wearing a mask, leave the pager store. The man was carrying a store bag and wearing a gray sweatshirt, jeans or overalls, a yellow hard hat, and brown work boots. He spoke to one of the women, and then got into a green Honda Civic and backed out of the alley. One of the women noticed a blue towel in the back seat of the car. The encounter lasted more than a minute, and one of the women stated that she got a "good look" at the man's face.

Moments after the robbery, the victim ran out of the store and into the alley, where he was struck by a green Honda Civic exiting the alley. The victim recorded the car's tag number, and reported the number to the police when officers arrived.

A police officer responding to the armed robbery call was met by a concerned citizen who told him that a green Honda Civic had exited the parking lot in a reckless manner just before the officer's arrival. She gave the officer the car's tag number. Police ran a check on the tag number given by the witnesses and determined that the car was owned by Brown.

Police issued a warrant for Brown's arrest, and then constructed a photographic lineup and showed it to the women who encountered the man in the alley. One of the women immediately selected Brown's picture from the lineup. The other woman was able to narrow her identification down to two of the six photographs, one of which was of Brown.

For weeks after the robbery, police were unable to locate Brown.

While interviewing Brown's aunt, officers learned that Brown was living with a woman named "Janelle." Brown's aunt did not provide police with the woman's last name or address.

A short time later, a police officer encountered a green Honda at a gas station, ran the tag number, and was alerted that the car was used in an armed robbery and that there was an outstanding arrest warrant on the car's owner. The officer stopped Brown and arrested him. Another officer began searching Brown's car and found a "skull cap" with a hole in it, the type of cap which the officer said is used as a mask. The officers impounded the car and applied for a warrant to search the vehicle. The search warrant authorized a search for:

> a yellow hard hat, blue jean overalls, gray sweatshirt, a black ski mask, tan work boots, a tape measure, and an AT&T green paper bag with white and light green writing on it with white handles. A blue handled cutting tool. A Black Cordless phone, and a white handset off of a telephone. A silver semi-automatic handgun, receipts, manuals, ammunition, cleaning equipment for a handgun, 10 cell phones used for display (not currently functioning), and three Motorola pagers. Blue towels.

While executing the warrant, officers found in Brown's car a blue towel and a furniture store receipt bearing the name "Janelle Mitchell" and an address. The officer examining the receipt immediately made the connection between the name and Brown, and seized the receipt.

Officers went to Mitchell's residence and asked her if she would consent to a search of her home. She consented, and officers found pliers with a blue handle, a tape measure, a yellow hard hat, a pair of tan boots, and a gray sweatshirt. Mitchell reported that the items belonged to Brown, and that Brown was employed as a construction worker.

At trial, the victim and other witnesses identified the items taken by police as resembling those worn and possessed by the robber.

1. Brown complains that police officers exceeded the scope of the search warrant when they used information from the furniture store receipt found in his car to determine Mitchell's full name and address. He argues that the warrant authorized a search for *handgun* receipts, not any other kind of receipts. We disagree.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided

by three principles. First, the trial judge sits as the trier of facts.[1] The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support the findings.[2] Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous.[3] Third, the reviewing court must construe the evidence most favorably to uphold the trial court's findings and judgment.[4]

At the outset, we conclude that the word "receipts" as it appeared in the search warrant was sufficiently broad to include *any* receipts which could have been in the car. Furthermore, even assuming the word "receipts" was intended to include only *handgun* receipts, as Brown contends, the officer was not compelled to overlook relevant information contained on the receipt.

During the hearing on Brown's motion to suppress, the officer who found the furniture receipt testified that she was looking for handgun receipts. She testified that she would not have known whether a receipt was for a handgun, as opposed to some other item, unless she looked at and read the receipt. The officer added that when she examined the receipt, she saw the name Janelle Mitchell, and she knew that Brown was living with someone named Janelle.

The fact that the police officer seized an item not listed in the warrant did not render the search a general one or make it unlawful.[5] The record does not indicate that the police officer undertook a generalized search for additional contraband, other incriminating evidence, or evidence of other crimes. In fact, it appears that the search and seizure of the receipt were reasonably related in scope to the officers' justification for initiating the search and seizure.[6]

The receipt at issue contained the last name and address of a woman for whom police were looking in connection with the robbery investigation. This information was a "pathway" to evidence, and the officer was entitled to seize the receipt as part of the investigation.[7] The officer was not required to overlook relevant information contained on the receipt simply because the particular type of receipt was not specifically enumerated in the search warrant.[8] We point out that the warrant was issued by a neutral and detached magistrate and was supported by probable cause, a point which Brown does not

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).
[2] Id.
[3] Id.
[4] Id.; *Kittler v. State*, 234 Ga. App. 120, 122 (3) (506 SE2d 231) (1998).
[5] See *McBee v. State*, 228 Ga. App. 16, 21 (3) (491 SE2d 97) (1997).
[6] See id. at 21-22 (3).
[7] See generally *Walsh v. State*, 236 Ga. App. 558, 560 (1) (b) (512 SE2d 408) (1999).
[8] See id.; see generally *Brown v. State*, 187 Ga. App. 714, 715 (3) (371 SE2d 257) (1988).

dispute. The trial court did not err in denying the motion to suppress.[9]

2. Brown argues that he was denied effective assistance of trial counsel because his attorney did not request a charge on misidentification. He urges that his sole defense was that the witnesses made a mistake in identifying him as the robber. This argument presents no basis for reversal.

There are two components to a claim for ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient; and (2) the defendant must show that the defense was prejudiced by the deficient performance.[10]

Here, the trial court charged the jury: on the elements of the crime of armed robbery, on the presumption of innocence, on the state's burden to prove that Brown committed the crime beyond a reasonable doubt, that each element of the crime had to be proved, on the credibility of witnesses and their means of and opportunity for knowing the facts about which they testified, and that Brown had no duty to prove his innocence.

One of the witnesses who was in the alley positively identified Brown as the man she saw leaving the pager store in court and in a photographic lineup. She also positively identified Brown at trial as the person she saw. The other witness was able to narrow the choices down to two photographs, one of which was Brown's. The crime occurred in daylight, and the witnesses observed and interacted with the perpetrator for about a minute. They also saw the man leave in a green Honda, and two other witnesses, including the victim, saw a man in a green Honda leave the alley recklessly just after the crime occurred. The car was registered to Brown. Clothes and other items like those worn or possessed by the perpetrator were found in Brown's car or his girlfriend's home.

The law does not require that a trial judge warn a jury against the possible dangers of mistaken identification of an accused as the person committing a crime.[11] Even where identification is the sole defense, it is not error for the court to fail to give an unrequested charge on misidentification where the charge as a whole correctly and thoroughly instructs the jury on such issues as the presumption of innocence, reasonable doubt, burden of proof, credibility of witnesses, and impeachment of witnesses.[12] Considering the entire charge and the overwhelming evidence that Brown was the man who committed the armed robbery, the trial court was authorized to con-

---

[9] See *McBee*, supra.

[10] *Smith v. State*, 250 Ga. App. 532, 535 (2) (552 SE2d 499) (2001).

[11] *Springs v. Seese*, 274 Ga. 659, 662, n. 4 (558 SE2d 710) (2002).

[12] Id.

clude that Brown failed to establish he was prejudiced by counsel's failure to request a specific instruction on identification; there is no reasonable probability that, but for this omission, the outcome of the trial would have been different.[13]

3. Brown contends on appeal that the trial court erred in not instructing the jury on identification, when misidentification was his sole defense. Brown argues this particular point for the first time on appeal. Because he failed to present this argument during his motion for a new trial, there is nothing for us to review in this regard.[14]

We note that the trial court specifically asked defense counsel immediately before the jury charge whether she wanted a charge on identification. Counsel replied that she did not. And when asked by the trial court whether she had any exceptions to the charge after it was given, defense counsel replied in the negative. Brown therefore waived any such charging error on appeal.[15]

In any event, as discussed in Division 2, the charge as a whole was sufficient, and the trial court was not required to give a specific charge on misidentification.[16]

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED MARCH 27, 2003.

*Rich & Smith, Randolph G. Rich*, for appellant.
*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney*, for appellee.

---

[13] See id. at 661 (3); see generally *Lowe v. State*, 241 Ga. App. 335, 337 (1) (526 SE2d 634) (1999).
[14] See generally *Smith v. State*, 237 Ga. App. 852, 854 (3) (521 SE2d 7) (1999).
[15] See *Austin v. State*, 246 Ga. App. 610, 614 (2) (540 SE2d 710) (2000).
[16] See *Springs*, supra at 662, n. 4.
[1] OCGA §§ 40-6-273; 40-6-270; 40-6-10 (b); 40-6-48; 40-6-123.