## A03A1961. WALKER v. THE STATE.
### (586 SE2d 757)

ELDRIDGE, Judge.

A Gwinnett County jury found Mychal H. Walker guilty of DUI — less safe driver. He appeals and contends solely that the trial court erred in denying his motion to suppress evidence of his "refusal" to

---

submit to a breath test. His several claims are each premised on the fact that the air flow sensor on the Intoxilyzer 5000 EN machine is not calibrated to produce an accurate numeric air flow volume. Finding no error, we affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles. First, the trial judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support the findings. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to uphold the trial court's findings and judgment.[1]

In reviewing a trial court's decision on a motion to suppress, all relevant evidence of record, including trial testimony as well as the testimony offered at the suppression hearing, may be considered.[2]

With these principles in mind, the evidence shows that the DUI charge arose after Walker was stopped at 2:30 a.m. pursuant to a routine sobriety check roadblock erected at the intersections of Peachtree Industrial and Holcomb Bridge Road. A strong odor of alcohol, slurred speech, and bloodshot eyes led to a request for voluntary performance of field sobriety exercises and Walker's acquiescence in their performance; the results of the exercises led to Walker's arrest for driving under the influence of alcohol.

The arresting officer in this case, S. Schunk, is a Georgia Peace Officer Standards and Training-certified veteran with the Gwinnett County Police Department's DUI force who has investigated "thousands" of potential DUI suspects. Schunk testified that, following Walker's arrest and the reading of implied consent, Walker agreed to take a breath test and did not request an additional independent chemical test at that time or at any other time.

A mobile Intoxilyzer 5000 EN, Serial Number 68-11123, (the "machine") was present at the roadblock, and a breath test was administered to Walker on the scene within 30 minutes of the initial stop. Quarterly certificates of inspection on the machine, issued the quarters before and after Walker's breath test, were introduced with-

---

[1] (Footnotes omitted.) *Brown v. State*, 260 Ga. App. 627, 628-629 (1) (580 SE2d 348) (2003).
[2] *Kinman v. State*, 243 Ga. App. 258, 259 (533 SE2d 124) (2000).

out objection and showed that the machine's "electronic and operating components prescribed by its manufacturer are properly attached and are in good working order." In addition, the machine performed a diagnostic test immediately prior to Walker's test, and such test demonstrated that the machine was working properly.

Schunk removed from its package a new plastic mouthpiece for Walker's test and made sure that there were no blockages; Schunk had "never had a problem" with blockage in the machine's mouthpieces; he showed Walker how to blow into the machine. The evidence is that "[i]t doesn't require a tremendous amount of breath to measure alcohol concentration." Schunk testified that an air sample flowing into the machine will generate a steady tone which will continue until the air flow stops; in addition, Schunk stated that visible condensation will form when an air sample enters the plastic mouthpiece. In this case, he stated that the machine never received an air sample from Walker:

> Mr. Walker did not blow into the machine as he was instructed. He was puffing on his cheeks acting like he was blowing but never blew into the machine, which is supposed to tone as we have been instructed and as it's done since I have used the intox. It never made a tone noise. . . . No; not as long as I had Mr. Walker blowing on it. . . . I actually took another mouth piece to show him how you've got to blow. I advised when he blows into it he can see the mouth piece fog up from him blowing into it. And I wasn't seeing that, and he still wouldn't blow into it. . . . I advised him if he wasn't going to blow into the machine I would count that as a refusal. . . . I've had several people play games with the machine. I've been around the machine a long time.

Schunk stated that he heard brief "ping" tones while Walker was puffing his cheeks, but never the "long constant tone, just a steady tone, complete tone. I never heard that." In addition, Schunk testified that,

> [t]he whole time during even the evaluation [Walker] kept advising me if I would help him out in this instant, he would make it worth my while. . . . He advised me after to help him out. He would make it worth my while. He was going through a tough time because he's accused of having sexual relations with his daughter. That's why he was out drinking that night.

During the three-minute test period, Schunk continued to coach Walker on how to blow into the machine, and Walker ostensibly made several "attempts." After three minutes, Walker's last breath test

printout from the machine read "insufficient sample," and the air flow sensor showed a numeric air flow volume of 0.345 liter, which is significantly below the 1.1 to 1.3 liter minimum air volume required for the machine to evaluate blood alcohol content ("BAC"). As Schunk stated,

> [Walker] is on the intox. He's refusing it. It's my interpretation. I've given the test numerous times. You know when people are playing with it. You know when they are blowing. You do it numerous different ways. If you're blowing hard enough, I'm going to hear a long steady tone and it will stop flashing: Please blow.

Based on his training and experience, Schunk determined that Walker was deliberately failing to provide adequate air volume for the machine to evaluate his BAC. As Walker was "playing with the machine" and making no real attempt to produce an air sample for evaluation, Schunk discontinued the test and registered Walker's failure to properly blow into the machine as a "refusal" to submit to chemical testing.

James Panter, the Georgia Bureau of Investigation's ("GBI") Manager of the Implied Consent Program, also provided evidence on the operation of the machine. The evidence adduced from Panter showed that the air flow sensor in the machine was in "good working order" or the machine could not have passed inspection as reflected in the certificates of inspection introduced without objection. Panter testified that the air flow sensor on the machine is unrelated to a quantitative evaluation of BAC for purposes of a DUI prosecution, and that a numeric air flow value is only included on the machine's printout when an insufficient air sample is given; otherwise, a BAC value will be present, not a numeric air volume reading.

Panter stated that the degree of accuracy of the air flow sensor is 0.1 liter, plus or minus. He further testified he personally made the decision not to require 100 percent accuracy as to the numeric amount of air volume because the accuracy of that number is not relevant to a DUI prosecution for excess BAC since air flow volume varies from subject to subject and does not demonstrate impairment. Panter testified that whether an insufficient sample is based upon 0.345, as here, or 0.922 is irrelevant; the machine recognizes when it has received an insufficient sample to perform a BAC evaluation and reports same. Further, a trained officer has the discretion to determine when a subject is "playing games" with the machine by deliberately giving an insufficient sample. Panter testified that, when determining whether a subject is "faking it" with the machine, he tells a trained officer to "[u]se your own judgment. Use common sense." GBI

guidelines leave it to a trained officer's discretion to register a "refusal" when a subject gives an insufficient air sample.

Additionally, Panter reviewed the printout from the machine which registered that Walker gave an "insufficient sample." He testified that the printout's 0.345 numeric air volume showed that,

> some of [Walker's] breath did pass through this mouth piece and go through the intoxilyzer and the flow sensor for the flow sensor to activate and start measuring. It wasn't a whole lot, but it was something.

Panter stated that an air flow volume of 0.345 is enough to make the machine generate a tone and to create condensation inside the mouthpiece. He testified that if the officer giving the test did not hear a tone, "[t]hat would indicate something was wrong with the instrument or the operator didn't hear the tone." Appellant Walker did not testify at the motion to suppress.

After hearing the evidence, the trial court found that the machine was working properly and that the air flow sensor was registering the fact that air was flowing into the machine, which was the proper function of that component. The court held that the relevant factor was that the machine received an "insufficient sample" to evaluate Walker's BAC regardless of whether the numeric value assigned to the volume of air flow was 100 percent accurate. Finally, the trial court concluded that any discrepancy between evidence that Walker blew not "a whole lot, but . . . something" into the machine and Officer Schunk's testimony that Walker did not blow any air into the machine would go to the weight not the admissibility of Officer Schunk's determination that Walker was "playing games" with the machine and, thus, "refused" to take the test. The trial court denied the motion to suppress. *Held*:

1. In his first three enumerations of error, Walker urges reversal and argues that the machine did not have "all its electronic and operating components . . . in good working order" as required by OCGA § 40-6-392 (a) (1) (A), because the machine's air flow sensor was not calibrated to produce an accurate numeric air flow volume; he also argues that the failure to accurately calibrate the volume of air flow denied him "exculpatory evidence" showing he attempted to generate an air sample; finally, he complains that Schunk was not properly trained to understand the significance of numeric air flow volume. We find no basis for reversal.

(a) The purpose of the air flow sensing component is to determine whether air is flowing into the machine so as to effectuate the machine's purpose to measure BAC. The sensor was working properly in the instant case, or as testimony showed, the machine would

not function at all. A diagnostic test performed before Walker's test showed the machine was working properly.[3] And the State's burden under OCGA § 40-6-392 (a) (1) (A) was met in this case through the introduction of the certificates of inspection for the machine.[4]

(b) A numeric air volume reading is produced by the sensor component only when a sample is insufficient for the machine to fulfill its function to measure BAC. The relevant issue is that an insufficient sample was given by the subject, not the numeric accuracy of the air flow that resulted in the insufficient sample. The evidence is that a great deal of breath is not required to measure alcohol concentration, and the sensor produces a numeric air flow value that is accurate within 0.1 liter, plus or minus. The fact that the sensor component has some margin for error relates to the weight, rather than the admissibility, of any test results.[5]

Further, the air flow sensor's numeric margin of error is sufficiently small so as to render the results amenable for the purposes argued by Walker, i.e., to show that an attempt to blow was made. Indeed, the "accuracy" of the air flow sensor appears a red herring in this case, since Walker's breath sample was significantly insufficient for BAC evaluation even taking into account the sensor's small, 0.1 liter margin of error. At the motion to suppress, Walker provided no evidence to show why he was unable to provide an adequate breath sample. Under such circumstances, the trial court was authorized to believe Schunk's testimony that Walker was unwilling, as opposed to unable, to give a sample sufficient to determine his BAC. "Since the defendant failed to show a medical or physical explanation why he was unable to take and complete the designated breath test, the trial court did not err in admitting evidence of such non-verbal refusal."[6]

(c) "An adequate breath sample shall mean a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis."[7] Here, Officer Schunk was trained to operate the machine and read the results of the BAC evaluation. An Intoxilyzer's "insufficient sample" reading on its face fails to produce a BAC, and an officer/operator is not required either by statute or by GBI guidelines to go behind the "insufficient sample" reading and perform an evaluation of the numeric air flow volume, which may

---

[3] *Gutierrez v. State*, 228 Ga. App. 458 (1) (491 SE2d 898) (1997).

[4] *Young v. State*, 275 Ga. 309, 310 (2) (565 SE2d 814) (2002).

[5] See *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991); see generally *Walker v. State*, 204 Ga. App. 559, 562 (4) (420 SE2d 17) (1992).

[6] (Citations omitted.) *Allen v. State*, 229 Ga. App. 435, 438 (1) (494 SE2d 229) (1997); accord *Bartnick v. State*, 203 Ga. App. 369, 370 (416 SE2d 739) (1992).

[7] OCGA § 40-6-392 (a) (1) (B).

vary from subject to subject. An Intoxilyzer operator "is not required to have an expert's knowledge of how the machine works."[8]

Moreover, when an insufficient sample is given, GBI administrative guidelines leave it to an officer's discretion to determine whether a subject is "faking it," regardless of the numeric value assigned to the air flow.[9] The statute specifically authorizes the GBI to adopt procedures with regard to the operation of its testing machines.[10] A trained officer such as Schunk, who has performed thousands of DUI evaluations, has a knowledge of behavioral and physical characteristics utilized by a subject who is "playing with the machine," and the officer is present to witness the subject's actions during the testing process. This Court declines Walker's invitation to go behind either the statute, the GBI guidelines, or the experiences of the officer in the field and legislate specific procedures that must be followed when an "insufficient sample" reading is accompanied by a numeric air flow value.

Under this same contention, Walker also claims that Schunk denied him the right to an independent chemical test by registering him a "refusal." However, Walker did not testify at the motion to suppress, and Schunk testified therein that Walker never expressed an interest in an independent test. Moreover, Walker specifically testified at trial that he did not ask for independent chemical testing. Indeed, Walker concedes this point by brief. Accordingly, Schunk's decision to register Walker's actions as a "refusal" did not deny him a right that he, admittedly, did not intend to exercise.

2. In his last claim of error, Walker challenges the trial court's charge to the jury that,

> A person has the right to refuse to take the state administered breath test. Evidence of that person's refusal is admissible in court and creates a rebuttable inference that the test would have shown that he had consumed alcohol.

This charge is proper.[11] Moreover, Walker testified at trial that he had consumed alcohol within three hours of the administration of the test. Reversal is not authorized by a jury charge that contains neither error nor harm.[12]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[8] (Citation omitted.) *Gutierrez v. State*, supra at 459.

[9] In that regard, it is patently false for Walker to assert by brief that "[o]perators are instructed to give another opportunity to provide a sample or declare a subject a refusal based upon the knowledge imparted by the flow sensor."

[10] OCGA § 40-6-392 (a) (1).

[11] See *White v. State*, 233 Ga. App. 276, 279 (503 SE2d 891) (1998).

[12] See, e.g., *Kennedy v. State*, 205 Ga. App. 152, 155-156 (5) (a) (421 SE2d 560) (1992).

DECIDED AUGUST 25, 2003.

*Clark & Towne, Jack E. Harrell, Jr.*, for appellant.
*Gerald N. Blaney, Jr., Solicitor-General, Jason R. Samuels, Assistant Solicitor-General*, for appellee.