A04A0125. THE STATE v. HESTER.
(602 SE2d 271)

MIKELL, Judge.

Scott Hayward Hester was charged with two counts of driving under the influence of alcohol ("DUI") and with making an illegal U-turn. The trial court granted Hester's motion to suppress all evidence gathered following the stop of his vehicle. It is from this ruling that the state appeals. We affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, ... [the] judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Because the trial court's decision involved the credibility of the witnesses, the de novo appellate review specified in *Vansant v. State*[2] does not apply.

With these principles in mind, the evidence shows that on January 13, 2002, the DUI task force of the Gwinnett County Police Department set up a sobriety check point near the intersection of Thompson Parkway and Singleton Road in Norcross. According to Sergeant Roy Smith, the roadblock was marked with orange cones with reflective striping and Department of Transportation signs that said "Caution Police Check Point Ahead," as well as marked police vehicles with their blue lights flashing. All officers working the checkpoint wore uniforms and reflective traffic vests and carried flashlights. Smith testified that the purpose of the road check was the detection and apprehension of impaired drivers. According to Smith, he observed a vehicle make a U-turn before arriving at the checkpoint. He further testified that because it appeared that the U-turn was made in a curve and on the crest of a hill, he ordered Officer Joel Whitt to pursue and stop the vehicle. On cross-examination, Smith admitted that in addition to the hill and curve where he alleged Hester made the U-turn, the street where the roadblock was set up had a flat portion where motorists could make legal turns into two business driveways. Smith could not describe the color, make, or model of the vehicle he observed other than it was a "passenger car" with its headlights on.

Whitt testified that he did not observe the U-turn, but that he was notified by other police officers on the scene that a vehicle had

---

[1] (Citation, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Accord *Walker v. State*, 262 Ga. App. 872, 873 (586 SE2d 757) (2003).

[2] 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

turned around to avoid the checkpoint. He could not recall if it was Smith who notified him. Whitt admitted that the only information he had when he began the pursuit was that a car had turned around. According to Whitt, after the other officers indicated the direction in which the vehicle was traveling, Whitt got in his car and drove approximately 100 yards. Hester's was the only vehicle he observed traveling in that direction. Whitt estimated that less than 30 seconds passed between the time he was notified of the U-turn and when he was able to locate the vehicle. Whitt stopped the vehicle and, after further investigation, arrested Hester for DUI and making an improper U-turn.

Hester testified that, believing the roadblock was an accident scene, he made a legal U-turn on the flat portion of the road while there was no traffic in either direction.

The state argues that the trial court erred in granting the motion to suppress because there was sufficient evidence that Whitt possessed reasonable, articulable suspicion that Hester had committed an illegal U-turn to justify a brief investigative stop of the vehicle.[3] This is not a case in which the articulable suspicion is suspicion of driving while impaired arising from legal but unusual maneuvers to evade the roadblock. Therefore, we are not assisted by the well-developed precedents illustrating the general rule that

> normal driving that incidentally evades a roadblock does not justify an investigative stop, [but] "abnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal."[4]

Instead, the suspicious activity in the case at bar was a traffic offense committed in the officer's presence: an impermissible U-turn in violation of OCGA § 40-6-121. Smith explained at the motion hearing: "You would have to go up the hill and around a curve. Doing a U-turn in such a manner is very unsafe. Not only unsafe but also illegal to do a U-turn on the hill crest in a curve. That's why he was stopped." OCGA § 40-6-121 (1) prohibits turning a vehicle to go in the opposite direction "[u]pon any curve," and subsection (2) prohibits

---

[3] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *Evans v. State*, 183 Ga. App. 436 (359 SE2d 174) (1987).

[4] *Jones v. State*, 259 Ga. App. 506, 507 (1) (578 SE2d 165) (2003), citing *Taylor v. State*, 249 Ga. App. 733, 735 (549 SE2d 536) (2001). See also *Richards v. State*, 257 Ga. App. 358 (571 SE2d 172) (2002) (defendant backing 50 feet uphill and turning into side street to avoid roadblock was sufficiently suspicious); *Castillo v. State*, 232 Ga. App. 354 (502 SE2d 261) (1998) (defendant's sudden stop, turn, and reversing maneuver near crest of hill was sufficiently suspicious).

such a turn near the crest of a hill. If believed by the trial court, Smith's testimony would likely supply probable cause for stopping Hester and would be more than adequate to justify the brief investigative stop authorized by *Terry v. Ohio*.[5]

Hester argues that we should affirm because the evidence is in conflict. The officers testified that the U-turn was made on a curve and a hill, while Hester maintained that he executed the turn on a flat, straight portion of the roadway. As we noted above, when a trial court's findings are based on conflicting evidence, they will be affirmed if there is any evidence to support them.

However, the state pointedly argues that the evidence is not in conflict on the critical issue of whether Smith had in fact and in good faith an articulable suspicion that the motorist had made an illegal U-turn.[6] Where the U-turn actually occurred would be decisive of the turn's legality. But its precise location does not determine the validity of the *Terry* stop. There was a U-turn and there was a hill in the vicinity. Therefore Smith had reasonable grounds for the suspicion, even if his belief was incorrect. If "the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition."[7]

Therefore, the evidence in this case is not in conflict on the crucial point, that Smith believed that Hester had made an illegal U-turn. But the trial judge, sitting as the trier of fact, chose to disbelieve the testimony. According to the order dated June 6, 2003, the court granted the motion to suppress "for failure to prove reasonable, articulable suspicion." Under the controlling precedent from our Supreme Court, *Tate v. State*,[8] the trier of fact "is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony."[9]

---

[5] Supra.

[6] Although the stop of Hester's vehicle was not made by Smith but by his colleague, Officer Whitt, Smith's articulable suspicion is attributed to Whitt under the "collective knowledge" doctrine. See *State v. Pennyman*, 248 Ga. App. 446, 447 (545 SE2d 365) (2001).

[7] *McConnell v. State*, 188 Ga. App. 653, 654 (374 SE2d 111) (1988) (physical precedent only), citing *Harley v. State*, 183 Ga. App. 253, 254-255 (358 SE2d 653) (1987); *Meneghan v. State*, 132 Ga. App. 380, 382 (1) (208 SE2d 150) (1974).

[8] Supra.

[9] Id. at 56 (3), citing *State v. Betsill*, 144 Ga. App. 267, 268 (2) (240 SE2d 781) (1977). Accord *State v. Hanson*, 243 Ga. App. 532, 537 (532 SE2d 715) (2000) (issues of witness credibility reserved for trial court, and appellate court cannot substitute its judgment for that of the trial judge); *State v. Aguirre*, 229 Ga. App. 736, 737 (494 SE2d 576) (1997). But see *Roberts v. State*, 267 Ga. 669, 675-676 (10) (d) (482 SE2d 245) (1997) (not error to charge a jury using the contrary rule). See also *State v. Gray*, 267 Ga. App. 753 (600 SE2d 626) (2004).

The dissent in *Tate* quoted a contrary rule: "The direct and positive testimony of an unimpeached witness which is not inherently improbable, incredible[,] or unreasonable and which is not contradicted, cannot be arbitrarily disregarded by the trier of fact."[10] But as explained by Judge Robert H. Jordan of this Court, later of our Supreme Court, "[t]here is a difference in arbitrarily or capriciously *disregarding* testimony and in *disbelieving* it upon a consideration of all circumstances arising from the evidence."[11] The majority opinion in *Tate* makes it clear that a trial judge may disbelieve the state's evidence, even if it is uncontradicted and unimpeached.

The contrary rule, urged by the dissent in *Tate*, is venerable, dating back at least to *Lankford v. Holton*[12] in 1938. But *Lankford*, like most of the precedents upon which it depended and most of the decisions which have since followed its rule, was a civil case. In a criminal case, especially one like the case sub judice, which involves fundamental liberties enshrined in the Bill of Rights and in our own state Constitution, very different considerations apply.[13] The trial judge, like the jury, is the primary guardian of the rights of a citizen. An absolute rule requiring the trial judge to believe the witnesses called by the state would contradict the American system of justice.

One prior decision of this Court, *State v. Stokes*,[14] squarely conflicts with the controlling precedents, *Tate*,[15] *State v. Hanson*,[16] and *State v. Aguirre*.[17] The *Stokes* decision reversed the grant of a

---

[10] Supra at 59 (Carley, J., dissenting), quoting *Nesbit v. Nesbit*, 241 Ga. 351, 352 (2) (245 SE2d 303) (1978). The contrary rule has also been urged in dissent in our Court in *Aguirre*, supra at 742 (Beasley, J., dissenting). See also *Burke v. State*, 86 Ga. App. 891 (72 SE2d 777) (1952); *Fincher v. Harlow*, 56 Ga. App. 578, 581 (193 SE 452) (1937).

[11] (Emphasis in original.) *Sellers v. State*, 107 Ga. App. 516, 519 (130 SE2d 790) (1963). See generally Credibility of Witness Giving Uncontradicted Testimony as Matter for Court or Jury, 62 ALR2d 1191.

[12] 187 Ga. 94, 102 (9) (200 SE 243) (1938). *Lankford* cited sixteen precedents, all but three being civil cases, mostly cases involving the unimpeached testimony of the employees of the defendant railroad. The criminal cases are either inapposite, *Patton v. State*, 117 Ga. 230 (43 SE 533) (1903) (jury not bound to believe testimony as to facts incredible, impossible, or inherently improbable), or seem to be based on the now suspect rule that witnesses who appear and testify are presumed to speak the truth, *Jones v. State of Ga.*, 48 Ga. 163 (1873); *Gibbs v. State*, 8 Ga. App. 107 (68 SE 742) (1910). See generally Propriety and Prejudicial Effect of Instruction, in Federal Criminal Trial, That Witnesses Are Presumed to Tell the Truth, 8 ALR Fed. 319.

[13] The "contrary rule," i.e., the rule of *Lankford* and *Nesbit*, may still be valid, despite *Tate*, in criminal cases based solely on circumstantial evidence when the unimpeached and uncontradicted testimony is that of defense witnesses. See *Lyons v. State*, 208 Ga. App. 632, 634 (431 SE2d 432) (1993). But see *Lush v. State*, 168 Ga. App. 740, 746 (310 SE2d 287) (1983) (Birdsong, J., dissenting).

[14] 185 Ga. App. 718 (365 SE2d 477) (1988).

[15] Supra.

[16] Supra.

[17] Supra.

motion to suppress, reciting the rule urged in the *Tate* dissent, and held that the state's evidence could not be rejected by the trial judge "upon the mere surmise that it perhaps might not be in accord with the truth."[18] *Stokes* is overruled.

Another prior decision of this Court, on facts similar to those of the case at bar, can be distinguished. In *State v. Webb*,[19] we reversed a trial court's grant of a motion to suppress involving an allegedly illegal U-turn to avoid a roadblock.[20] But our decision in *Webb* did not address the credibility of the state's witnesses. In *Webb*, the trial court had suppressed the contraband because it determined that the defendant's U-turn had not in fact been illegal and that the state's evidence was the "fruit of an illegal arrest."[21] We ruled, as we have in the case sub judice, that the relevant inquiry is not whether the U-turn was in fact in violation of OCGA § 40-6-121 but whether the officer had an articulable suspicion sufficient to justify a *Terry* stop. In other words, the trial judge had based his ruling on a mistaken view of the law rather than a disbelief of the witnesses. Where it is evident, as in *Webb*, that the motion to suppress was based upon an erroneous view of the law, we will continue to reverse.[22] But when no error of law appears on the record, and the trial court's ruling is based on the credibility of the oral testimony presented at the hearing, we must, under the guidance of the precedents discussed above, leave the decision to the trial judge as the trier of fact.

*Judgment affirmed. Andrews, P. J., Johnson, P. J., Ruffin, P. J., Eldridge, Barnes, Miller, Ellington, Phipps and Adams, JJ., concur. Smith, C. J., and Blackburn, P. J., concur specially and in judgment only.*

BLACKBURN, Presiding Judge, concurring specially and in the judgment only.

Based on our standard of review and the trial court's findings of fact and credibility in this case, we must conclude that, based on the evidence of record and under the totality of the circumstances, Sergeant Smith lacked sufficient facts to develop any *reasonable*, articulable suspicion that Hester had committed any crime prior to having him stopped. As such, Hester's stop was constitutionally infirm at its outset, and our analysis need go no further. For this

---

[18] (Citations and punctuation omitted.) *Stokes*, supra at 720. The four decisions cited by *Stokes* need not be addressed. Two were civil cases. The two criminal cases were distinguishable.

[19] 193 Ga. App. 2 (386 SE2d 891) (1989).

[20] Id. at 3 (1).

[21] Id.

[22] See generally *Vansant*, supra at 320 (de novo review applied to the trial court's application of the law to undisputed facts).

reason, I regrettably cannot concur with all that is said in the analysis of the majority opinion and must write separately.

The standard of review in this case is well established.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles. First, the trial judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support the findings. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to uphold the trial court's findings and judgment.

(Footnotes omitted.) *Brown v. State.*[23]

Here, Sergeant Smith testified unequivocally that, without obstruction, he witnessed Hester make a U-turn "in the curve on a hill crest," thereby making the U-turn illegal pursuant to OCGA § 40-6-121. Sergeant Smith further testified that the *only* reason he had Hester stopped was because he had committed this purportedly illegal U-turn. Hester, on the other hand, testified that he made his U-turn on a straight portion of the road which was both flat and level in such a way that the driving maneuver would have been legal.

After weighing this directly conflicting evidence, the trial court chose to believe Hester and disbelieve Sergeant Smith and found that, since no illegal U-turn occurred, Sergeant Smith had no reasonable, articulable suspicion of criminal activity on which to base the initial stop of Hester's car. In accordance with our longstanding standard of review, we must accept, unless clearly erroneous, both the trial court's determination of Sergeant Smith's credibility and its finding of fact that no illegal U-turn occurred. As there is no evidence showing that the trial court acted erroneously, we must conclude that the initial stop of Hester was improper.

In drawing this conclusion, we need not and cannot reach questions regarding the honesty of Sergeant Smith's belief that an illegal U-turn occurred because, under the facts as found by the trial court, there were simply no reasonable grounds for Hester's stop. Viewed in the light most favorable to the trial court's findings and rulings, Sergeant Smith saw no crime being committed, and there is no

---

[23] *Brown v. State*, 260 Ga. App. 627, 628-629 (1) (580 SE2d 348) (2003).

evidence of record which, under the totality of the circumstances, would render any suspicion of criminal activity he harbored regarding Hester's actions otherwise *reasonable*. See, e.g., *In the Interest of B. C. G.*[24] (physical precedent only).

As a result, although I understand the noble motives of the majority, we are not authorized to reach or overrule this Court's prior decision in *State v. Stokes*.[25] This opinion does not turn on the honesty of Sergeant Smith's beliefs, which the trial court has already implicitly decided in any event. The trial court's ultimate determinations of whether Sergeant Smith honestly believed that a crime had been committed and whether reasonable, articulable suspicion existed to initially stop Hester rested on the trial court's resolution of credibility issues and contradictory testimony. For these reasons, *Stokes* is simply not applicable in the case presently before us.

I am authorized to state that Chief Judge Smith joins in this opinion.

DECIDED JULY 15, 2004.

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Wanda L. Vance, Jason R. Samuels, Assistant Solicitors-General*, for appellant.
*Monte K. Davis*, for appellee.

---

[24] *In the Interest of B. C. G.*, 235 Ga. App. 1, 5 (2) (508 SE2d 239) (1998).
[25] *State v. Stokes*, 185 Ga. App. 718 (365 SE2d 477) (1988).